Matthew R. Mendelsohn
David A. Mazie
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

**[Additional Attorneys Appear on Signature Page]**

Attorneys for Plaintiff and Plaintiff Class

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGINA FELDMAN, individually and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br> vs.<br><br>MERCEDES-BENZ USA, LLC, DAIMLER NORTH AMERICA CORPORATION, and DAIMLER, AG,<br><br>       Defendants. | No.: 2:10-CV-6159(SDW)(MCA)<br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

   Plaintiff Regina Feldman ("Feldman"), brings this action against Defendants Mercedes-Benz USA, LLC ("MBUSA"), Daimler North America Corporation ("DNAC"), and Daimler, AG ("Daimler") (collectively "Defendants" or "Mercedes"), by and through their attorneys, individually and behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

   1.  This is a class action lawsuit brought by Plaintiff on behalf of herself and a nationwide class of current and former Mercedes vehicle owners and lessees with defective Air Intake System ("AIS" or "AIS System") in the following Mercedes vehicle models: 2007-2011

GL Class Mercedes, 2006-2011 ML Class Mercedes, and 2006-2011 R Class Mercedes ("Class Vehicles").  The GL Class and ML Class vehicles are sport utility vehicles, and the R Class vehicle is a multi-purpose vehicle.

2.      At the time of sale or lease, the Class Vehicles were all equipped with a defective AIS.  The AIS provides fresh air for the air conditioning system of the Class Vehicles.  The Class Vehicles' AIS are uniformly and inherently defective in materials, manufacturing, and workmanship resulting in water ingress into the interior of the vehicle damaging the carpet and other interior items including vital electronics ("AIS Defect"). Significantly, when a Class Vehicle sustains water ingress damage as a result of the AIS Defect, such damage poses a safety risk and is unreasonably dangerous because the Class Vehicles will not function properly and can even result in engine shut-down while driving, thereby contributing to car accidents.  The AIS Defect is explained in more detail below.

3.      Mercedes knows or should have known that the Class Vehicles and their AIS Systems are defective, not fit for their intended purposes, and are an unreasonable dangerous safety risk.  Nevertheless, Mercedes has actively concealed and failed to disclose this defect to Plaintiff and prospective class members at the time purchase or lease and thereafter.

4.      Not only did Mercedes actively conceal the fact that particular components within the Class Vehicles are defective (and require costly repairs to fix), but it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the vehicles, as well as potentially cause a safety concern.

5.      Upon information and belief, as early as January 2006, if not before, Mercedes knew or should have known about the AIS Defect.  Indeed, it issued a Technical Service Bulletin that addresses this very problem in the Class Vehicles on the above date and clearly

must have known about and been investigating this defect for a significant period of time prior to that date.  Yet notwithstanding its longstanding knowledge of this defect, Mercedes has routinely refused to repair the Vehicles when the defect manifests alleging the water ingress is caused by an "outside influence," "fluid damage" or "environmental exposure" and, therefore, not covered under warranty.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant MBUSA has a North American headquarters in this jurisdiction, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, all Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

8.     This Court has personal jurisdiction over Defendants MBUSA, DNAC and Daimler.   Defendant MBUSA's North American corporate headquarters is located in Montvale, New Jersey.  As such, they have conducted substantial business in this judicial

district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

## THE PARTIES

### Plaintiff

9.      Plaintiff, Regina Feldman ("Feldman") purchased a Certified pre-owned 2006 Mercedes-Benz R350 ("Vehicle") from Keyes European on November 13, 2008.  At the time that Feldman purchased the Vehicle, the Vehicle was still covered under the new vehicle limited warranty.  The Vehicle was purchased primarily for personal, family, or household purposes.   The Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification Number: 4JGCB65E36A027836.

10.      December is the rainy season in the county of Los Angeles, California. Feldman was operating her Vehicle in the county of Los Angeles, California, during December 2010.  At this time, the Vehicle had been driven a total of approximately 46,000 miles and was covered under MBUSA's Certified Pre-Owned 100,000 miles express warranty.  Unbeknownst to Feldman, also at this time, the Vehicle's AIS was clogged.  On or about December 23, 2010, due to the AIS being clogged, water flooded into the interior portion of the Vehicle, causing substantial damage to the air conditioning system, the electrical system, and the carpeting.  As a result of the flooding, it was no longer possible to safely operate the Vehicle without the Vehicle undergoing extensive repairs.

11.      Feldman took the flooded Vehicle to Keyes European, a Mercedes-Benz dealership, for evaluation.  Keyes European advised Feldman that the damage was not covered under the manufacturer's express warranty, and that Feldman should contact her insurance

company and ask that they pay for the repairs under Feldman's Comprehensive and Collision coverage.

12.     Feldman submitted the matter to her insurance company.  A repair estimate was written on January 2, 2011, at which time it was estimated that the Vehicle sustained $17,061.76 worth of damage as a result of the flooding.  Feldman's insurance company determined that the Vehicle was a total loss.  As a result, Feldman's insurance company did not repair the Vehicle, but instead paid Feldman the fair market value of the vehicle, less a $500.00 insurance deductible incurred by Feldman.

13.     As with all other Class Members, Mercedes never informed Feldman through the Vehicle's maintenance booklet or otherwise, about the need to occasionally inspect the AIS to determine if the AIS was clogged and clean if necessary.  Similarly, despite the fact that Feldman purchased the vehicle almost a year after defendants notified their dealers about the existence of the defect and how to fix it, plaintiff was sold the vehicle without the modification.

14.     Mercedes has very detailed guidelines relating to the manner in which it authorized dealers are supposed to provide maintenance to Class Vehicles.  The guidelines include maintenance schedules, broken down into Service A, Service B, and Service C maintenance schedules.  At all times relevant, Mercedes failed to indicate in any of the maintenance schedules for the Class Vehicles the requirement by dealerships to check, maintain, and clear the AIS in order to prevent vehicle flooding.  Additionally, Mercedes also failed to notify the owners and lessees of the Class Vehicles of some independent duty to inspect and clean the AIS.

15.     Plaintiff Feldman has suffered an ascertainable loss as a result of Defendants'

omissions and/or misrepresentations associated with the AIS Defect, including, but not limited to, out of pocket loss associated with the AIS defect and the totaling of her vehicle.

16.     None of the Defendants, or any of their agents, dealers or other representatives informed Plaintiff of the existence of the AIS Defect and/or defective vehicle design, and purposefully omitted this information at purchase and during routine maintenance in an effort to avoid having to correct and/or repair this defect under the limited warranty.  Defendants' purposeful actions were intended to hide the defect from plaintiff and the Class until such time that their vehicles were outside the limited warranty period, thereby shifting the burden of responsibility for payment.

**The Defendants**

17.     Defendant MBUSA, is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 3 Mercedes Drive, Montvale, New Jersey 07645, and, for purposes of 28 U.S.C. § 1441(b), is a citizen of the State of New Jersey.  MBUSA is a wholly-owned subsidiary of Daimler AG.

18.     Defendant DNAC, is a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 36455 Corporate Drive, Farmington Hills, MI 48331.  DNAC is a wholly-owned subsidiary of Daimler AG.

19.     Defendant Daimler is a German corporation headquartered at HPC 0624, D-70546 Stuttgart, Germany.

20.     Upon information and belief, Defendant MBUSA communicates with Defendants Daimler and DNAC concerning virtually all aspects of the Mercedes products it distributes within the United States.

21.     Upon information and belief, the design, modification, installation and decisions

regarding the AIS within the Class Vehicles were performed exclusively by Defendant(s) MBUSA, DNAC and/or Daimler.

22.     Upon information and belief, Defendants MBUSA, DNAC and/or Daimler develop the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for Class Vehicles.

23.     Defendants MBUSA, DNAC and/or Daimler engage in continuous and substantial business in New Jersey.

## TOLLING OF STATUTES OF LIMITATION

24.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the class could not have reasonably discovered the true, defective nature of the AIS Defect until shortly before this class action litigation was commenced.

25.     Defendants were and remain under a continuing duty to disclose to Plaintiff and members of the class the true character, quality and nature of the Class Vehicles, that this defect is based on defects in materials and/or manufacturing, that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of the active concealment by Defendants, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.**     **The Defective AIS within the Class Vehicles.**

26.     The standard features offered by Mercedes in the Class Vehicles varied based on, *inter alia*, Class Vehicle engine platforms.  However, all Class Vehicles contain a climate control system which is equipped with a defective AIS that is shaped like a box and located under the hood on the passenger side.  The purpose of the AIS is to obtain fresh air from

outside the vehicle to use in the climate control system.

27.     The AIS in the Class Vehicles are defective because they fail to prevent leaves, twigs, debris, and other objects from entering the AIS.  This failure causes a drain located at the bottom of the AIS to clog-up with organic debris, which prevents water during rain or when the vehicle is washed from exiting the AIS.  When enough water builds up in the AIS, the water overflows into vehicle's climate control system, and ultimately enters the cabin area of the Class Vehicles, resulting in substantial electric failure and damage due to the water damaging the vehicle's computer, electrical system, and interior components of the Class Vehicles. This defect – which typically manifests before the express warranty period has expired – will inevitably cause extensive damage to the Class Vehicles by damaging the carpet, carpet padding, other interior parts, and electrical components within the vehicle.

28.     Upon information and belief, Mercedes issued Technical Service Bulletin ("TSB") T-B-83.10/80 on or about January 7, 2006 addressing water leaks into the interiors of the Class Vehicles.  *See* Exhibit 1.

29.     TSBs are designed to provide guidance to Mercedes mechanics and service people with respect to reoccurring problems or issues.  T-B-83.10/80 provided a fault tracing and service method for common complaints of water leaks into the interiors of the Class Vehicles.

30.     Specifically,   T-B-83.10/80 advises that:

> If you receive customer reports in the above model vehicles of tree debris collecting in the cowl area or water ingress into the interior of the vehicle due to the climate unit overflowing, the drain valve in the bottom of the climate system air intake should be removed. In heavy rain, the water in the air intake housing may not drain due to the drain valve being blocked with debris. This is more common with vehicles that are parked under trees which shed small leaves, needles etc. (Figure 1).



Figure 1 – Debris in cowl area          T-B-83.10/80

31.     Through T-B-83.10/80, Mercedes instructs repair technicians to perform the following procedure:

1.  Open Engine Hood.

2.  Remove climate system air intake cover by releasing the two clips and pulling up.

3.  Remove drain valve (star shaped grommet) from the bottom of the climate unit (Figure 2).

4.  Reinstall air intake cover.



Figure 2 – Drain Valve (251 shown)      T-B-83.10/80

32.     In many instances, consumers have and will incur expenses for this repair despite the AIS Defect having been contained in the Class Vehicles when manufactured by

Defendants and despite that the defect manifests during the warranty period.

33.    The Class Vehicles are designed to function for periods (and mileages) substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the vehicle will allow water to enter the interior for significantly longer than the limited times and mileages identified in Defendants' warranties, if ever.[1]

34.    Plaintiff is also informed and believes and based thereon alleges that Mercedes acquired its knowledge of the AIS Defect through sources not available to class members, including but not limited to pre-release testing data, early consumer complaints about the AIS Defect contained in the Class Vehicles to Mercedes and its dealers who are its agents for vehicle repairs, testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Mercedes dealers, and from other internal sources.

35.    Members of the class could not have discovered the latent AIS Defect through any reasonable inspection of their vehicles prior to purchase.

36.    Defendants failed to adequately research, design, test and/or manufacture the AIS before warranting, advertising, promoting, marketing, and selling it as suitable and safe for use in an intended and/or reasonably foreseeable manner.

37.    Defendants expressly warranted the affected vehicles to be free from defects for a period of 4 years or 50,000 miles with respect to its Express Limited Warranty, and would repair or replace any parts that were defective in material or workmanship during the warranty period.  Defendant also expressly warranted that the affected vehicles to be free from defects with respect to its engine, electrical system, climate control, and other vehicle parts for a period

---

[1] Indeed, Plaintiff and class members reasonably expected the AIS to last for the life of their vehicles.

of 5 years or 100,000 miles with respect to its Certified Pre-Owned Express Warranty and 7years or 100,000 miles with respect to its extended Optional Limited Express Warranty.

38.     Buyers, lessees, and other owners of the affected vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles.  Had these buyers and lessees not been purposely deceived by defendants regarding their vehicles and the known defects within them, Class members would have taken steps to prevent the AIS drain from clogging, and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles at all.

**B.     Complaints by Other Class Members**

39.     Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Sunroof Drainage Defect within the Class Vehicles.[2]

**C.     New Jersey Law Should Apply**

40.     To the extent that it is appropriate to engage in a choice of law analysis for purposes of deciding any motion to dismiss that may be filed by Mercedes, New Jersey's substantive laws should apply to the proposed nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.

41.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and

---

[2] http://www.benzworld.org/forums/w251-r-class/1437967-r350-water-leak.html; http://www.justanswer.com/mercedes/1zqao-hello-2006-r350-developed-water-leak-leads-water.html

Credit Clause, art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

42.     Specifically, Defendants' North American headquarters and principal place of business is located in New Jersey.  Defendant MBUSA is registered with the New Jersey State Business Gateway Service.  And according to its website, MBUSA's Customer Assistance Center is located in Montvale, New Jersey.[3]

43.     Defendants also own property and conduct substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendants' conduct under its laws. Defendants' decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

44.     A substantial number of members of the Class also reside in New Jersey and purchased their vehicles in New Jersey.

45.     Upon information and belief, New Jersey is also the State from which Defendants' misconduct emanated.  This conduct similarly injured and affected all Plaintiffs and Class members residing in the United States.  For instance, Defendants' marketing and advertising efforts, warranty and goodwill policies and procedures, and maintenance schedules and recommendations were all likely created in and orchestrated from the location of Defendant MBUSA's present headquarters in New Jersey.  As a result, New Jersey is where the conduct causing injury to the Plaintiff and Class members occurred and emanated from.

46.     The application of New Jersey's laws to the Nationwide Class is also

---

[3] http://www.mbusa.com/mercedes/contact_us/overview

appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on his own behalf, and on behalf of a nationwide class, pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).  Specifically, the following Class and Sub-Class:

> Nationwide Class:     All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").
>
> California Sub-Class: All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Sub-Class").

48.     Excluded from the Nationwide Class and the California Sub-Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify the Nationwide Class and California Sub-Class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

49.     Numerosity:  Upon information and belief, each of the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes that tens of thousands of Class Vehicles have been sold and leased in the United States of America, and thousands of Class Vehicles have been sold or leased in California.

50.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions or law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

a.   whether the AIS drains in Class Vehicles are predisposed to clogging;

b.   whether the AIS Systems in Class Vehicles contain a design defect;

c.   whether the AIS Systems in Class Vehicles contain a defect in material, manufacturing and/or workmanship;

d.   whether the AIS Defect is common to all Class Vehicles;

e.   if so, whether the AIS Defect causes water ingress into the interior of the vehicle and the resulting damage;

f.   whether Defendants knowingly and purposefully failed to disclose the existence and cause of the AIS Defect in Class Vehicles in order to defraud plaintiff and the plaintiff classes and improperly shift the burden of payment;

g.   whether Defendants' conduct violates the New Jersey Consumer Fraud Act and the other statutes asserted herein;

h.   whether Defendants' conduct violates the California Legal Remedies Act;

i.   whether Defendants' conduct violates California's Secret Warranty Law;

j.   whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the AIS Defect, Plaintiff and members of the classes have suffered ascertainable loss of moneys and/or property and/or value;

k.   whether Plaintiff and class members are entitled to monetary damages and/or other remedies, and if so the nature of any such relief; and

51.    <u>Typicality</u>:   Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a class vehicle with a AIS Defect, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

52.    <u>Adequacy</u>:  Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously.   The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

53.    <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class to individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the

Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims and registration records, and database of complaints.

54.　　Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NJCFA
### (On Behalf of the Nationwide Class)

55.　　Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

56.　　The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" N.J.S.A. 56:8-2.

57.　　Plaintiff and members of the Class are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

58.　　Defendants engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NJCFA. Specifically, Defendants were aware that the Class Vehicles suffered from a common defect resulting in water ingress into the interior of the Class Vehicles, but purposefully failed to disclose this to Plaintiff and Class members during the purchase of the vehicle or thereafter. Defendants failed to disclose the AIS Defect with the knowledge that many Class Members may not discover the AIS Defect until after the expiration of their warranties. Further, Defendants marketed these luxury vehicles as being of

superior quality when the Class Vehicles contained a known defect. In addition, Defendants affirmatively misrepresented that the items contained in the maintenance schedule and owners' manual were the only things that needed to be done to ensure that the vehicle operated as intended, when in fact Defendants were aware that it was necessary to clean and/or remove the AIS drain to prevent clogging and water ingress into the interior of the Class Vehicles. These affirmative misrepresentations were material to the vehicle purchases, and were false statements of fact.

59.    Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions. Defendants purposefully and knowingly failed to disclose the defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

60.    Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect in the AIS, which was not readily discoverable until years later, sometimes after the warranty has expired. In fact, on the date plaintiff purchased her vehicle defendants had acknowledged the defect to their dealers 11 months earlier and described how to remedy the defect, and yet plaintiff's vehicle was never modified and she was never advised about the defect. As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost. These facts that Defendants concealed were solely within their possession.

61.    Defendants intended that Plaintiff and all Class Members rely on the acts of

concealment and omissions, so that they would purchase the Class Vehicles and not have the defects remedied under warranty.

62.     As a result of Defendants' conduct, Plaintiff and Class members have suffered an ascertainable loss.  In addition to direct monetary losses which can be in excess of $10,000, Plaintiffs and Class members have also suffered an ascertainable loss by receiving less than what was promised.

63.     A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class.  Had the AIS Defect in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or would have presented their vehicles for repair of the defect under warranty.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Classes)**

64.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

65.     Defendants expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle limited warranty period.

66.     Defendants breached this warranty by selling to Plaintiffs and Class members the class vehicle with known defect, including but not limited to their defective AIS System.

67.     Defendants further breached this warranty by failing to repair and/or replace plaintiff and other putative class members' AIS System and the resulting damage caused by

water ingress into the interior of the vehicle when the defects failed during the warranty period.

68.     Defendants knew of the aforesaid defects at least as early as January 2006, if not before, and continues to have knowledge of the defect(s) and breaches of its express warranty, yet has intentionally failed to notify Plaintiff and members of the Plaintiff Class.

69.     This intended failure to disclose known defect(s) is malicious, and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiff and members of the Plaintiff Class.

70.     As a result of the Defendants' actions, Plaintiff and members of the Plaintiff Class have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

71.     Defendants' breach of this warranty caused damages to Plaintiff and Class members.

72.     Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and purposefully concealed the defect until such time that the Class Vehicles were out of warranty.  Further, even when the defect manifested during the warranty period, as was the case with plaintiff Feldman, Defendants' refused to repair the vehicle under warranty.

73.     The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class.  Among other things, Plaintiffs and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in

bargaining power existed between Mercedes and Class members, and Mercedes knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

74.    Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT III**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class Pursuant to the**
**Song-Beverly Act California Civil Code Section 1791.1 )**

75.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

76.    Defendant Mercedes is a "merchant" as defined under the Uniform Commercial Code ("UCC").

77.    The Class Vehicles are "goods" as defined under the UCC.

78.    Defendants impliedly warranted that the Class Vehicles were of a merchantable quality.

79.    Defendants breached the implied warranty of merchantability, as the Class Vehicles were not of a merchantable quality at the time of sale and thereafter due to the AIS Defect, and the associated problems caused by this defect.  Specifically, the AIS Defect can cause a catastrophic failure of the electrical system within the vehicle, preventing use of the vehicle for the most elementary task, providing transportation from point "A" to point "B."  In fact, plaintiff Feldman's vehicle was so badly damaged by the AIS Defect that her vehicle was "totaled."

80.     As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured, and are entitled to damages.

81.     Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and actively concealed the defect from Class Members in order to allow the applicable warranty period to run.

82.     The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and member of the Class.   Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Mercedes and Class members, and Mercedes knew or should have known that the Class Vehicles were defective at the time of sale and that the sunroof drainage system would fail well before their useful lives.

83.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT IV**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or,**
**Alternatively, the California Sub-Class)**

84.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

85.     Defendants made material misrepresentations and omissions concerning a presently existing or past fact.   For example, Defendants did not fully and truthfully disclose to

its customers the true nature of the inherent defect with the AIS in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.  As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost.

86.     These omissions and statements were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and Class members rely on them.

87.     Plaintiff and Class members reasonably relied on these statements and omissions, and suffered damages as a result.

## COUNT V
## BREACH OF THE DUTY OF GOOD FAITH
## AND FAIR DEALING
### (On Behalf of the Nationwide Class)

88.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

89.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

90.     Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class members of the AIS Defect in the Class Vehicles, and failing to fully and properly repair this defect.

91.     Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and Class members some benefit of the bargain originally intended by the parties, thereby

causing them injuries in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class)**

92.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.     As a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects, required maintenance, and the scope of the Warranty coverage in the Class Vehicles, Mercedes has profited through the sale and lease of said vehicles.

64.     Additionally, as a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Plaintiff and members of the Class members have incurred substantial costs to repair the defects and therefore have conferred an unjust substantial benefit upon Mercedes.

65.     Moreover, as a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Mercedes has profited to the extent that Plaintiff and members of the Class purchased and leased Defendants' vehicles, purchased certified Mercedes parts directly from the defendants to repair the defects, and had to pay for repairs out of their own pocket that should have been covered under warranty.

66.     Mercedes has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to defendants' profits when said money should have remained with Plaintiff and members of the Class.

67.     As a result of the defendants' unjust enrichment, Plaintiffs and members of the Plaintiff Class have suffered damages.

## COUNT VII
### Violation of California's Consumer Legal Remedies Act,
### California Civil Code section 1750 *et seq*.
### (On Behalf of the California Sub-Class)

68.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.    Plaintiff brings this cause of action on behalf of herself and on behalf of the members of the California Sub-Class.

70.    Defendants are "persons" as defined by Civil Code section 1761(c).

71.    Plaintiff and Members of the Class are "consumers" within the meaning of Cal. Civ. Code section 1761(d).

72.    By failing to disclose and concealing the AIS defect, Defendant violated Civil Code section 1770(a), as it represented that its Class Vehicles and AIS in its Class Vehicles had characteristics and benefits that they do not have, and represented that its Class Vehicles and its AIS were of a particular standard, quality or grade when they were of another.  (*See* Cal. Civ. Code sections 1770(a)(5, 7).)

73.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

74.    Defendants knew that its Class Vehicles and AIS were defectively designed or manufactured, would fail prematurely and were not suitable for their intended use.

75.    Defendants was under a duty to Plaintiffs and the Class to disclose the defective nature of the AIS because:

a.    Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' AIS;

   b. Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the AIS' had a dangerous safety defect until manifestation of the failure; and

   c. Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the safety defect.

76. In failing to disclose the AIS defect, Defendants has knowingly and intentionally concealed material facts and breached its duty not to do so.

77. The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class know the defective nature of the AIS, they would not have purchased the Class Vehicles, would have paid less for them, or would have required defendant to repair the defect free of charge.

78. Plaintiff and the Class reasonably expected the AIS to function properly for the life of their vehicles.  That is the reasonable and objective consumer expectation for vehicle AIS.

79. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the Class have suffered and will continue to suffer actual damages.

80. Plaintiff and the Class are entitled to equitable relief.  Pursuant to the provisions of Cal. Civ. Code § 1780, Plaintiff seeks an order enjoining Defendants from the unlawful practices described herein, a declaration that MBUSA's conduct violates the CLRA, and attorneys' fees and costs of litigation.

81. Plaintiff has provided Defendants with notice of its alleged violations of the

CLRA pursuant to California Civil Code § 1782(a).  If, within 30 days of the date of the notification letter, Defendant fails to provide appropriate relief for its violation of the CLRA, Plaintiff will amend this Complaint to seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief that Plaintiff seeks now.

### COUNT VIII
**Violation of California's Unfair Business Practices Act,**
**California Business & Professions Code section 17200** *et seq.*
**Violations of California's Secret Warranty Law**
**(On Behalf of the California Sub-Class)**

82.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

83.    Plaintiff brings this cause of action on behalf of herself and on behalf of the Members of the Class.

84.    Mercedes has violated, and continues to violate, California Civil Code section 1795.90 *et seq.* (the "California Secret Warranty Law"). The California Secret Warranty Law was enacted to abolish "secret" warranties. The term "secret warranty" is used to describe the practice by which an automaker establishes a policy to pay for repair of a defect without making the defect or the policy known to the public at large. A secret warranty is usually created when the automaker realizes that a large number of its customers are experiencing a defect not covered by a factory warranty, and decides to offer warranty coverage to individual customers only if, for example, the customer complains about the problem first.  The warranty is considered "secret" because all owners are not notified of it.  Instead, the automaker usually issues a service bulletin to its regional offices and/or dealers on how to deal with the defect, although a service bulletin or other formal document is not necessary to create a secret warranty. Because owners are kept in the dark about the cost-free repair, the automaker only has to reimburse those consumers who complain loudly enough; the quiet consumer pays to fix the defect his or herself.

85.    Mercedes is a "manufacturer" as that term is defined by Section 1795.50 of the

California Secret Warranty Law.  Section 1795.2 of the California Secret Warranty Law imposes several duties on auto manufacturers like Mercedes, each of which is designed to do away with secret warranties.

86.     Plaintiffs and members of the proposed Class are consumers as that term is defined by Section 1795.90(a) of the California Secret Warranty Law. The California Secret Warranty law requires automakers to notify consumers, by first-class mail, within 90 days of adoption, whenever they enact "any program or policy that expands or extends the consumer's warranty beyond its stated limit or under which [the] manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially effect vehicle durability, reliability, or performance [.]"

87.     The California Secret Warranty Law also requires automakers to provide the New Motor Vehicle Board with a copy of the notice described above, so the public can view, inspect, or copy that notice.

88.     Additionally, the California Secret Warranty Law requires automakers to advise their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or reimbursement program.

89.     The California Secret Warranty Law also requires an automaker to "implement procedures to assure reimbursement of each consumer eligible under an adjustment program who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program."

90.     On or about January 2006, Defendants issued a technical service bulletin that describes a problem with the AIS utilized in the Class Vehicles.  In that bulletin, Mercedes Benz describes the problem as follows:

> If you receive customer reports in the above model vehicles of tree debris collecting in the cowl area or water ingress into the interior of the vehicle due to the climate unit overflowing, the drain valve in the bottom of the climate system air intake should

be removed. In heavy rain, the water in the air intake housing
may not drain due to the drain valve being blocked with debris.
This is more common with vehicles that are parked under trees
which shed small leaves, needles etc. (Figure 1).

91.    This TSB claims that the defect can be cured by removing the AIS drain and
describes how to remove the drain and instruct its dealers to cover the repair under warranty.

92.    Plaintiff is informed and believes that the free AIS drain removal offer is
applicable to all Class Vehicles. However, Defendants do not typically pay for AIS drain
removal under its New Car Warranty (or any other warranty) because Defendants consider the
drain removal and the clogging that it causes to be the result of an outside influence not
covered by its warranty.  Moreover, the Class Vehicles' manuals do not consider the AIS drain
cleaning and/or removal to be a maintenance item.   Again, this maintenance item is not
included as part of the warranty coverage.   Thus, by extending its warranties to cover AIS
drain removal, Defendants have "expand[ed] or extend[ed] the consumer's warranty beyond its
stated limit."

93.    Additionally, the vehicle performance problems that the drain removal
procedures are intended to address "substantially affect the vehicle durability, reliability, or
performance."  These problems include, but are not limited to engine failure, electronic system
failure, as well as water damaging the computer, electrical system, and interior components of
the vehicle.   Therefore, the offer to provide free removal of the AIS drain for some class
members is an "adjustment program" within the meaning of the California Secret Warranty
Law.

94.    Plaintiffs are informed and believe that Defendants have also extended their
warranty in another way; namely, by employing a secret policy to offer free AIS correction, as
well as to repair the AIS Defect related damage for those consumers who complain loudly
enough.  The decision to offer the free AIS correction and/or to repair the AIS defect related
damage outside the vehicle's New Car Warranty is not done on an ad hoc basis.  Rather, have
instituted systematic policy -- communicated to inter alia, regional offices, dealers, and

customer care personnel -- to deny warranty claims for damage caused by the AIS Defect unless the customer appeals the initial denial and complains loudly enough.  This "deny first, pay later" policy was instituted to pacify the most vocal consumers so as to preserve Defendants' reputation and shift a majority of the costs to some Class Members.  Upon information and belief, the code names for this policy are "goodwill adjustments" or "policy adjustments."

95.     Again, maintenance of the AIS drain is not included in the warranty coverage. Thus, by extending its warranties to cover AIS correction and/or AIS Defect related damages, Mercedes has "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit." Thus, this AIS correction and/or AIS defect damage related program constitutes an adjustment program under the Secret Warranty Law and constitutes an offer to pay for or to reimburse consumers for the cost of repairing a condition that substantially affects vehicle durability, reliability, or performance.

96.      As a result of the foregoing, Defendants are obligated to comply with the provisions of the California Secret Warranty Law with respect to its clearing, correction, and reimbursement offers.  It has not done so.

97.     Specifically, Defendants did not notify Plaintiff, or any other owner or lessee of a Class Vehicle of their right to free removal of the AIS drain or to be reimbursed for the cost of the same, or reimbursement for the AIS Defect related damage.

98.     Defendants have also refused to provide the free AIS correction or reimbursement for the AIS defect related damage offers to owners or lessees of affected vehicles who have specifically requested it. Moreover, even though defendants are aware of an alternative design for the AIS which would rectify the AIS defect, Defendant has refused to notify Plaintiffs, or any other owner or lessee of a Class Vehicle of this available fix of the AIS and has refused to reimburse owners or lessees of Class Vehicles for the cost of such a fix.

99.     Additionally, Defendants have refused to reimburse consumers who have paid to clear or remove the AIS drain and/or replace the AIS and/or paid for AIS Defect related

damage.

100.    Upon information and belief, Defendants did not comply with the dealer-notification provisions of the California Secrete Warranty Law.

101.    Upon information and belief, Defendants have also failed to comply with the New Motor Vehicle Board notification procedures.

102.    By committing the acts and practices alleged herein, Defendants violated the Secret Warranty Law, and by doing so, have engaged in deceptive, unfair and unlawful business practices in violation of the Unfair Competition Law ("UCL"), Bus. & Prof. Code sections 17200 *et seq*.

103.    Defendants' violations of the Secret Warranty Law (hence the UCL) continue to this day. As a direct and proximate result of Defendants' violations of the Secret Warranty Law, hence the UCL, Plaintiff and Class members have paid to conduct repairs to the AIS and to repair the AIS related defect.

104.    Pursuant to Section 17203 of the UCL, Plaintiff and Class Members seek an order of this Court requiring Defendants to comply with the terms of the California Secret Warranty Law by (a) notifying Class Members of the secret AIS drain removal, modification and correction of the defects in the AIS, and reimbursement for AIS Defect related damage as required by the California Secret Warranty Law; (b) providing free AIS repairs, modification, correction, and replacement to all Class Members as required by the Secret Warranty Law; ( c) identifying and reimbursing all Class Members who have paid for AIS drain clearing or removal, replacement, modification, correction, and/or for payments made relating to AIS Defect damage related repair as required by the Secret Warranty Law; (d) notifying California dealers of the facts underlying the AIS Defect and the terms of the secret AIS drain removal, replacement, correction, modification, and AIS Defect damage related repair or replacement as required by the Secret Warranty Law; and (e) notifying the California New Motor Vehicle Board of the secret AIS drain removal, replacement, correction, modification, and AIS defected related damage repair reimbursement program as required by the Secret Warranty

Law.

105.    Plaintiff and Class Members also seek an order (i) enjoining Defendants from failing and refusing to make full restitution of all moneys wrongfully obtained as a result of its violations of the California Secret Warranty Law, and (ii) disgorging to Plaintiff and Class Members all ill-gotten revenues and/or profits earned as a result of Defendants' violation of the California Secret Warranty Law, plus an award of attorneys' fees and costs.  This is because Defendants profited from its sale of replacement AIS and AIS Defect related parts to mechanics and dealers because they ultimately replaced, repaired, corrected, or modified the defective AIS and AIS Defect related damaged parts for Plaintiffs.

**COUNT IX**
**INJUNCTIVE RELIEF**

106.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

107.    Injunctive relief is appropriate and necessary to remedy defendants' wrongful conduct and to prevent Mercedes from continuing its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.  Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.  Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled, except that for now, Plaintiff seeks only equitable and injunctive relief with respect to his claims under California's Consumer Legal Remedies Act, California Civil Code section 1750 et seq.;

D.  Award pre-judgment and post-judgment interest on such monetary relief;

E.  Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to comply with California's secret warranty law, repair, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F.  Award reasonable attorney's fees and costs; award of reasonable attorney's fees pursuant to California Code of Civil Procedure 1021.5 and any other theory of recovery, and grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated:  February 22, 2011

By: _____

Matthew Mendelsohn
David A. Mazie
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net
e-mail: dmazie@mskf.net

Payam Shahian
**STRATEGIC LEGAL PRACTICES, APC**
11601 Wilshire Blvd., Suite 500
Los Angeles, CA 90025
Telephone: (310) 575-1845
Facsimile: (310) 693-9085
e-mail: pshahian@slpattorney.com

Robert L. Starr
**THE LAW OFFICE OF ROBERT L. STARR**
23277 Ventura Boulevard
Woodland Hills, California, 91364-1002
Telephone: (818) 225-9040
Facsimile: (310) 225-9042
e-mail: starresq@hotmail.com

### LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

_____
MATTHEW R. MENDELSOHN

Dated:  February 22, 2011