UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **REGINA FELDMAN and LYNN DEUTSCH,** *individually and on behalf of others similarly situated*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **MERCEDES-BENZ USA, LLC, and DAIMLER, AG,** <br><br> **Defendants.** | Civ. No. 2:11-cv-00984 (WJM) <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiffs Regina Feldman ("Feldman") and Lynn Deutsch ("Deutsch") filed this putative class action against Defendants Mercedes-Benz USA, LLC ("MBUSA") and Daimler, AG ("Daimler") (collectively "Defendants"). This matter comes before the Court on motions to dismiss filed by both Defendants, and Defendants' request to strike the class allegations from the Amended Complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, MBUSA's motion to dismiss is **GRANTED** in part, and **DENIED** in part; Daimler's motion to dismiss is **GRANTED** in part, and **DENIED** in part; and Defendants' request to strike Plaintiffs' class allegations is **DENIED**.

      **I.    BACKGROUND**

      This products liability action was filed by Plaintiffs on behalf of themselves, a putative nationwide class, and a California subclass comprised of current and former Mercedes-Benz vehicle owners and lessees of the following Mercedes vehicle models: 2007-2011 GL Class vehicles, 2006-2011 ML Class vehicles, and 2006-2011 R Class vehicles ("Class Vehicles"). First Amended Complaint ("Amended Complaint" or "FAC") ¶ 1, ECF No. 20. Defendant MBUSA is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at Montvale, New Jersey. FAC ¶ 39. MBUSA is a wholly-owned subsidiary of Defendant Daimler. *Id.* Daimler is a German corporation headquartered in Stuttgart, Germany. *Id.*

1

¶ 40.  Daimler designs and manufactures the Class Vehicles, while MBUSA distributes, services, and warrants them in the United States.  *Id.* ¶¶ 42-43.

## A.  THE ALLEGED AIR INTAKE SYSTEM DEFECT

The gravamen of Plaintiffs' Amended Complaint is that the Class Vehicles were equipped with a defective Air Intake System ("AIS"). The AIS provides fresh air from outside the vehicle to be used by the climate control system.  *Id.* ¶ 2.  Plaintiffs allege that the AIS in the Class Vehicles is defective because it fails to prevent leaves, twigs, and other objects from entering the AIS, causing it to clog.  *Id*.  The AIS contains a "closed-end" drain valve made of a rubber-like material at the bottom of the AIS.  *Id*.  The material and the shape of the drain valve allegedly cause organic debris to be trapped and clog the valve.  *Id*.  As a result, during rain or when the vehicle is washed, water builds up in the AIS and enters the Class Vehicles' climate control system and vehicle interior, resulting in substantial electrical failure and damaging to the interior components of the Class Vehicles.  These alleged defects are referred to herein as "the AIS Defect."

Plaintiffs allege that the AIS Defect presents a safety hazard and is unreasonably dangerous to consumers because of the danger of catastrophic engine and/or electrical system failure while the vehicle is in operation.  *Id.* ¶ 3.  Plaintiffs assert that flooding can cause sudden engine failure at any time and under any driving conditions or speeds, including highway speeds, thereby contributing to traffic accidents.  *Id*.

Plaintiffs allege that, since late 2005, if not before, Defendants knew the Class Vehicles and their AIS were defectively manufactured and/or designed, not fit for their intended purposes, and were an unreasonably dangerous safety risk.  *Id.* ¶ 4.  Plaintiffs allege that Defendants actively concealed and failed to disclose this defect to Plaintiffs and prospective Class Members at the time of purchase, lease, repair or thereafter.  *Id*.  In January 2006, MBUSA issued a Dealer Technical Bulletin ("DTB") to its dealers, stating:

> If you receive customer reports in the above model vehicles of tree debris collecting in the cowl area or water ingress into the interior of the vehicle due to the climate unit overflowing, the drain valve in the bottom of the climate control system air intake should be removed. In heavy rain, the water in the air intake housing may not drain due to the drain valve being blocked with debris. This is more common with vehicles that are parked under trees which shed more leaves, needles etc.

*Id.* ¶ 6.  The DTB instructed the dealer to modify the AIS by "remov[ing] the drain valve (star-shaped grommet) from the bottom of the climate unit" ("AIS modification").  *Id.* ¶ 7.  The DTB further states, "[t]he allowable labor operations should be used when submitting a warranty claim for this repair," and the DTB provides a damage code for use "[i]n [c]ase of [w]arranty."  *Id.*

Plaintiffs allege that Defendants failed to notify owners and lessees of the 2006-2008 Class Vehicles, in maintenance booklets or otherwise, that they had an independent duty to inspect and clean the AIS. *Id.* ¶¶ 32-35. Starting in 2009, MBUSA included in its maintenance schedule for the 2009-2011 Class Vehicles the requirement that they undergo service to "clean water drain in air/water duct" at every "20,000 miles or 2 years." *Id*. However, MBUSA failed to provide the same notice to the owners and lessees of 2006-2008 Class Vehicles, which contain the same parts. *Id*.

Plaintiffs allege that because of Defendants' concealment of the AIS Defect and refusal to cover the AIS modification under warranty, Plaintiffs incurred substantial economic damages.

### B. PLAINTIFF FELDMAN

On November 13, 2008, Plaintiff Regina Feldman purchased a Certified Pre-Owned 2006 Mercedes-Benz R350 from an authorized Mercedes-Benz dealer, Keyes European, in Van Nuys, California. *Id.* ¶ 20. At the time of purchase the vehicle was covered under the Certified Pre-Owned 100,000-mile express warranty ("CPO Warranty"). *Id*. On or about December 23, 2010, when her vehicle had approximately 46,000 miles on the odometer, the AIS clogged and water flooded into the interior portion of the vehicle, causing substantial damage to the climate control system, the electrical system, and the carpeting. *Id.* ¶ 21. Feldman discovered the damage when she attempted to use her vehicle and it would not start. *Id.* ¶ 22. She jump started her flooded vehicle and drove it to Keyes European for evaluation. *Id*. Keyes European confirmed her vehicle had the AIS Defect and that it sustained water ingress damage to numerous components, including parts in the electrical system and climate control system, and advised Feldman that the damage was not covered under the terms of her CPO Warranty. *Id*. Feldman was further advised to contact her insurance company and request that the carrier pay for the repairs under her comprehensive and collision insurance coverage. *Id*.

Feldman submitted the matter to her insurance company. *Id.* ¶ 23. A January 2, 2011 repair estimate showed $17,061.76 worth of damage as a result of the flooding, and Feldman's insurance company determined that the damage to the vehicle represented a total loss. *Id*. As a result, the insurance company paid Feldman the fair market value of the vehicle, less a $500.00 insurance deductible. *Id*.

### C. PLAINTIFF DEUTSCH

On January 9, 2010, Plaintiff Lynn Deutsch purchased a used 2007 Mercedes-Benz R350 from a dealer in California with approximately 20,396 miles on its odometer. *Id.* ¶ 25. On or about November 26, 2010, while her vehicle was covered under the New Vehicle Limited Warranty ("NVLW"), Deutsch noticed it would not start. *Id.* ¶ 26. In response, Deutsch jump started the vehicle and brought it to an authorized Mercedes-Benz dealer, Autobahn Motors in Belmont, California. *Id*. Deutsch was advised that her

3

vehicle's AIS drain was clogged with organic debris, which resulted in water backing up into the AIS and overflowing into the interior of the vehicle. *Id.*

Deutsch's vehicle sustained significant damage, including but not limited to damage to the interior, electrical system, and climate control system. *Id.* ¶ 27. As a result of the damage, it was no longer possible to safely operate the vehicle without it undergoing extensive repairs. Despite the fact that Deutsch's vehicle was still covered under the NVLW, she was advised the repairs would not be covered because the water leak was an "outside influence" not covered under MBUSA's 4-year/50,000-mile express warranty. *Id.* ¶ 28. Accordingly, she was provided an estimate of $2,280 to repair the damage, including the AIS modification that MBUSA had outlined in its DTB. *Id.*

Deutsch requested that MBUSA repair the damage to her vehicle under the NVLW. *Id.* ¶ 29. In response, MBUSA refused to cover the repair under the NVLW, but offered to provide Deutsch with a "one time goodwill repair to insure client satisfaction" and to charge her only for the parts and not for the labor to perform the repairs. *Id.* ¶ 31. Because Deutsch needed the vehicle repaired, she accepted the offer and paid about $1,033.00 for the repairs. *Id.* The dealer also refused to pay for Deutsch's rental car fees while her vehicle was out of service for approximately 20 days. *Id.*

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America,* 361 F.3d 217, 223-224 (3d Cir.2004)) (internal quotation marks omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

### III.   DISCUSSION

Plaintiffs assert ten causes of action in their Amended Complaint:

(1) Count I:  Violation of the New Jersey Consumer Fraud Act ("NJCFA");
(2) Count II:  Breach of Express Warranty;
(3) Count III:  Breach of the Implied Warranty of Merchantability;
(4) Count IV:  Common Law Fraud;
(5) Count V:  Breach of the Duty of Good Faith and Fair Dealing;
(6) Count VI:  Unjust Enrichment;
(7) Count VII:  Violation of California Consumer Legal Remedies Act ("CLRA");
(8) Count VIII: Violation of California Secret Warranty Law ("SWL");
(9) Count IX: Violation of California Unfair Competition Law ("UCL"); and
(10) Count X: Injunctive Relief.

Defendants have moved to dismiss every Count, except for the breach of express warranty claim made by Plaintiff Deutsch.  Defendants also seek to strike the class allegations from the Amended Complaint.

The Court will first address choice of law for the asserted claims.  The Court will then address the motions to dismiss.  Finally, the Court will address Defendants' request to strike the class allegations.

### A.  CHOICE OF LAW

Plaintiffs argue that the Court should apply New Jersey law to the claims asserted on behalf of the putative nationwide class, and California law to the claims asserted on behalf of the putative California subclass.  Defendants argue that the Court should apply the law of Plaintiffs' home state – California – to all of Plaintiffs' claims.  For the reasons set forth below, the Court finds that the law of each individual's home state should be applied.  Accordingly, the Court will apply California law to Plaintiffs' claims.

The Court will first address the legal standard governing choice of law, generally.  Second, the Court will address considerations governing choice of law analysis on a motion to dismiss.  Third, the Court will address choice of law analysis for Plaintiffs' fraud claims.  Finally, the Court will address choice of law for Plaintiffs' contract claims.

### i. Choice of Law, Generally

A federal court sitting in diversity applies the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As such, the Court will apply the choice of law rules of New Jersey.

New Jersey has adopted the "most significant relationship" test of the Restatement of Conflict of Laws. *P.V. v. Camp Jaycee,* 197 N.J. 132, 142-43 (2008). This test requires a two-step analysis. *Id.* at 143. The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. *Id.* Second, if a conflict does exist, the Court must determine which state has the "most significant relationship" to the claim, by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action." *Snyder v. Farnam Companies, Inc.*, 792 F.Supp. 2d 712, 717 (D.N.J. 2011). Choice of law analysis is performed on an issue-by-issue basis. *Id.*

### ii. Choice of Law on a Motion to Dismiss

Plaintiffs argue that it is premature to conduct a proper choice of law analysis, as the Court does not yet have a full factual record. Due to the factual inquiry that may be necessary to properly weigh the Restatement factors, "it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place." *In re Samsung DLP Television Class Action Litigation*, No. 07–2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009). For that reason, courts in this District sometimes defer choice of law analysis until the class certification stage. *See id.* However, "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Harper v. LG Elecs. USA, Inc.*, 595 F.Supp.2d 486, 491 (D.N.J. 2009). As such, courts, including the Third Circuit, frequently determine that choice of law analysis in a putative class action can be done at the motion to dismiss stage. *See, e.g.*, *Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 255 n. 5 (3d Cir. 2010); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699-700 (D.N.J. 2011); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, No. 08–5380, 2010 WL 1424014, at *2 (D.N.J. April 8, 2010).

In this case, deferring choice of law analysis until the class certification stage is unnecessary, as the choice of law issues presented do not require a full factual record.

### iii. Choice of Law for Fraud Claims

Five Counts of the Amended Complaint sound in fraud: (1) Count I: Violation of the NJCFA; (2) Count IV: Common Law Fraud; (3) Count VII: Violation of the CLRA; (4) Count VIII: Violation of the SWL; and (5) Count IX: Violation of the UCL (together, "Fraud Counts"). For the reasons set forth below, the Court finds that the law of each Plaintiffs' home state governs the Fraud Counts.

Under the first step of New Jersey's choice of law analysis, Courts in this District have recognized that the NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011); *see also Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461 (D.N.J. 2009) ("*Agostino I*") (significant conflicts exist between the NJCFA and the consumer protection statutes of other states).

Under the second step of New Jersey's choice of law analysis, the Court considers the factors set forth in the relevant Restatement. Claims sounding in fraud or misrepresentation are governed by Section 148 of the Restatement (Second) of Conflicts of Law. Restatement (Second) of Conflict of Laws § 148 (1971); *see also Agostino I*, 256 F.R.D. at 462-64 (applying Section 148 to claim for common law fraud and claims under various state consumer fraud statutes).

Section 148 has two subsections, and the parties disagree about which subsection applies. Section 148(1) governs when the defendant "made" the fraudulent representations in the same state in which the consumer relied on the representations. *Agostino v. Quest Diagnostics Inc.*, No. 04-4362, 2010 WL 5392688, at *16 (D.N.J. Dec. 22, 2010) ("*Agostino II*"). Section 148(2) governs when the misrepresentations and the reliance occurred in different states. *Id.* Defendants argue that Section 148(1) applies because any representations were made to Plaintiffs in California and any omitted information would have been communicated to them in California. Plaintiffs argue that Section 148(2) applies because the representations and omissions emanated from MBUSA's headquarters in New Jersey. This Court will follow the Third Circuit and the majority of courts in this District in finding that the alleged representations were "made" at the Defendants' headquarters, not in the consumers' home states. *See, e.g.*, *Cooper*, 374 F. App'x at 255; *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10–1456, 2010 WL 4116997, at *3-4 (D.N.J. Oct. 18, 2010). Thus, the Court will apply Section 148(2) instead of Section 148(1).

Under Section 148(2), courts consider the following six factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where the tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2).

In this case, based on the allegations in the Amended Complaint, the six factors weigh in favor of applying the law of each Plaintiffs' home state. First, the place where Plaintiffs acted in reliance upon Defendants' representations was California. Second, the place where Plaintiffs received the representations was California. Third, the place where MBUSA made the representations was New Jersey, and the place where Daimler made the representations was Germany. Fourth, Plaintiffs reside in California, MBUSA is headquartered in New Jersey and incorporated in Delaware, and Daimler is domiciled in Germany. Fifth, the tangible things which are the subject of the transaction between the parties, namely, the Class Vehicles, were situated in California. Finally, the place where Plaintiffs were to render performance under the contracts which they were induced to enter by the alleged false representations of Defendant was California. Four of the six factors clearly weigh in favor of applying California law; none of the factors clearly weigh in favor of applying New Jersey law. Thus, the Court finds that the Section 148(2) factors weigh in favor of applying the law of Plaintiffs' home state.

In holding that the law of Plaintiffs' home state applies, this Court follows a long line of cases in this Circuit holding that a consumer's home state law should apply to transactions that "bear[] no relationship to New Jersey other than the location of [the defendant's] headquarters." *Cooper*, 374 F. App'x at 255; *see also Nikolin*, 2010 WL 4116997, at *4 ("[T]his Court is persuaded by the majority of courts that have held that the location of the manufacturer's headquarters does not supersede the numerous contacts with the consumer's home state"); *Agostino I*, 256 F.R.D. at 464 ("The Court concludes that each plaintiff's home state has the most significant relationship to the parties and the issues affecting each plaintiff's [fraud] claims"); *Warma Witter Kreisler, Inc.*, 2010 WL 1424014, at *1-2 (allegation that product was designed in New Jersey "does not outweigh other, more significant, ties" to plaintiff's home state); *In re Philips/Magnavox TV Litig.*, No. 09–3072, 2010 WL 3522787, at *9–10 (D.N.J. Sept. 1, 2010) (same).

Plaintiffs rely heavily on *In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009) ("*Tele Aid*") to support their argument that MBUSA's headquarters alone should determine the choice of law analysis. However, courts in subsequent cases have declined to follow *Tele Aid*, as it "appears to be the only case from this District to have applied § 148(2) to hold the NJCFA applicable to out-of-state consumers." *Gray v. Bayer Corp.*, No. 08-4716, 2011 WL 2975768, at *6 (D.N.J. July 21, 2011); *see also Nikolin*, 2010 WL 4116997, at *4 (distinguishing *Tele Aid* as the minority view). Plaintiffs also argue that New Jersey has an interest in deterring wrongful activity by New Jersey corporations. Plaintiffs are correct. However, the question here is not whether New Jersey has any interest in this matter at all; it is whether New Jersey has the most significant relationship with this dispute. *Nikolin*, 2010 WL 4116997, at *4. This Court finds that it does not.

### iv. Choice of Law for Breach of Contract Claims

Four Counts of the Amended Complaint sound in contract: (1) Count II: Breach of Express Warranty; (2) Count III: Breach of the Implied Warranty of Merchantability; (3) Count V: Breach of the Duty of Good Faith and Fair Dealing; and (4) Count VI: Unjust Enrichment (together, "Contract Counts"). For the reasons set forth below, the Court finds that the law of each Plaintiffs' home state governs the Contracts Counts.

Under the first step of New Jersey's choice of law analysis, courts have held that an actual conflict exists between the laws of New Jersey and California governing contract claims. *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 720 (D.N.J. 2011). Under the second step, claims sounding in contract are governed Section 188 of the Restatement (Second) of Conflicts of Law. Restatement (Second) of Conflict of Laws § 188; *see also Arlandson*, 792 F. Supp. 2d at 704 ("[S]ince breach of express and implied warranty claims sound in contract, courts look to Section 188 of the Restatement to determine which state's law applies"); *Clark v. Prudential Ins. Co. of Am.*, No. 08-6197, 2009 WL 2959801, at *19 (D.N.J. Sept. 15, 2009) (Section 188 governs good faith and fair dealing claims); *Feinberg v. Saunders, Karp & Megrue, L.P.*, No. 97-207, 1998 WL 863284, at *7 (D. Del. Nov. 13, 1998) (Section 188 governs unjust enrichment claims).

Section 188 of the Restatement requires courts to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188. Additionally, courts look to the more general factors set forth in Section 6 of the Restatement: (1) interests of interstate comity, (2) interests of the parties, (3) interests underlying the field of law, (4) interests of judicial administration, and (5) competing interests of the states. Restatement (Second) of Conflict of Laws § 6; *P.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453, 463 (2008).

In this case, the Section 188 factors weigh in favor of applying the law of each Plaintiffs' home state. First, the place of contracting was California. Second, to the extent that any negotiations took place, they took place in California. Third, the place of performance under the contracts was California. Fourth, the Class Vehicles that were the subject matter of the contract were located in California. Finally, Plaintiffs reside in California, MBUSA is headquartered in New Jersey and incorporated in Delaware, and Daimler is domiciled in Germany. Four of the five factors clearly weigh in favor of applying California law; none of the factors clearly weigh in favor of applying New Jersey law. The factors set forth in Section 6 do not change this result. *See Clark v. Prudential Ins. Co. of Am.*, No. 08-6197, 2009 WL 2959801 (D.N.J. Sept. 15, 2009) ("the factors of Restatement § 6 do not serve to alter the analysis conducted under Restatement § 188 as to which state has the most significant relationship to the Plaintiffs' [contract]

claims"). Thus, the Court finds that the factors weigh in favor of applying the law of Plaintiffs' home state to the Contract Counts.

In holding that the law of Plaintiffs' home state applies, this Court follows other cases in this Circuit holding that warranty claims should be governed by the law of each consumers' home state. *See, e.g.*, *Agostino I*, 256 F.R.D. at 465 ("[T]he Court will apply the laws of the prospective Class members' home states because each state has the most significant relationship with the contract claims asserted by their home state plaintiffs."); *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 883 (D.N.J. 2010).

### B. MOTION TO DISMISS

Plaintiffs assert ten causes of action in the Amended Complaint. Defendants have moved to dismiss every Count, except for the breach of express warranty claim made by Plaintiff Deutsch. The Court will address each Count in turn.

#### i. Count I: Violation of the NJCFA

In Count I, Plaintiffs assert a claim for violation of the NJCFA on behalf of the putative nationwide class. Defendants move to dismiss. Because the law of each consumer's home state applies to their consumer fraud claims, the named Plaintiffs cannot invoke the NJCFA on behalf of themselves or the putative nationwide class. Accordingly, the motion to dismiss Count I is **GRANTED**, and Count I is **DISMISSED WITH PREJUDICE**.

#### ii. Count II: Breach of Express Warranty

In Count II, both Plaintiffs assert claims against MBUSA for breach of express warranty. Plaintiffs do not assert breach of express warranty claims against Daimler. FAC ¶ 89. MBUSA moves to dismiss the claim asserted by Feldman for breach of the CPO Warranty. MBUSA does not move to dismiss the claim asserted by Deutsch for breach of the NVLW.

The CPO Warranty lists a number of parts from the electrical system and climate control system that are covered under the Warranty and states: "If a Part is Not Listed, It Is Not Covered." McDonald Decl., Ex. 2 at 11. The CPO Warranty does not list the "AIS" as a covered part. *Id.* at 11-14; *see also id.* at 16 ("If a system, item, part, or accessory is not listed . . . it is not covered"). The Court recognizes that the AIS is likely comprised of component parts and may not be referred to in the CPO Warranty using the exact words "Air Intake System." That said, the Amended Complaint fails to identify these component parts or link them to the list of parts in the CPO Warranty. Thus, Feldman fails to state a claim for breach of the CPO Warranty.

Feldman also argues that, as a result of damage to the AIS, other covered parts of her vehicle were damaged. However, the CPO Warranty states that "[t]his limited

10

warranty does not cover any consequential or secondary damages that may be suffered as a result of the need to repair or replace a warranted part . . . ." McDonald Decl., Ex. 2 at 16. Feldman therefore cannot recover under the CPO Warranty for any consequential damages.

Accordingly, the motion to dismiss Feldman's claim under Count II is **GRANTED**, and Feldman's claim under Count II is **DISMISSED WITHOUT PREJUDICE**.

### iii.  Count III:  Breach of the Implied Warranty of Merchantability

In Count III, Plaintiffs assert a claim for breach of the implied warranty of merchantability on behalf of the putative California subclass. Defendants move to dismiss this claim, arguing that Plaintiffs' implied warranty expired before the alleged AIS defect arose. The Court agrees with Defendants.

California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act") provides that, for used cars like Plaintiffs', the duration of the implied warranty of merchantability is in no event "less than 30 days nor more than three months following the sale . . . ." Cal. Civ. Code § 1795.5(c). Feldman bought her vehicle on November 13, 2008, so at the latest, her implied warranty expired three months later on February 13, 2009, yet the alleged flooding incident occurred in December 2010, long after this implied warranty had expired. FAC, ¶¶ 20-22. Deutsch purchased her vehicle in January 2010, yet her water ingress issue occurred more than three months later in November 2010. FAC, ¶¶ 20-22, 25-26. Because Plaintiffs' implied warranties expired before the alleged AIS defect arose, Plaintiffs have failed to state a claim for breach of implied warranty.

Plaintiffs argue that the implied warranty did not expire because the Class Vehicles were defective when sold. However, California courts have held that reading the Song-Beverly Act to encompass such claims would essentially eviscerate the time limits set forth in the Act. *See Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 2591445, at *6-8 n.7 (N.D. Cal. Aug. 21, 2009) (explaining that the plain language interpretation of the Act has been adopted by the vast majority of California courts).

Accordingly, the motion to dismiss Count III is **GRANTED**, and Count III is **DISMISSED WITHOUT PREJUDICE**.

### iv.  Count IV:  Common Law Fraud

In Count IV, Plaintiff asserts a claim for common law fraud on behalf of the putative nationwide class. Defendants move to dismiss. The Court finds that the motion to dismiss Count IV should be denied.

11

The elements of fraud in California are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004). Although allegations of fraud must meet the heightened pleading standards of Rule 9(b), plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).

Plaintiffs adequately state a claim of fraud by omission. They allege specific facts showing Defendants' knowledge and concealment of the alleged defect. They allege that Defendants were obligated to, but did not, disclose specific material facts about the AIS from 2005 onward for specified model years of specified vehicles. They alleged justifiable reliance in that a reasonable customer would not have purchased the car or would have paid less for it had the defect been disclosed, and they allege actual damages for the expense of repairing the AIS and related damage. *See Marsikian v. Mercedes Benz USA, LLC*, No. 08-4876, 2009 U.S. Dist. LEXIS 117012, at *16-17 (C.D.Cal. May 4, 2009) (holding similar allegations regarding the AIS Defect to be sufficient under Rule 9(b)); *see also Falk*, 496 F.Supp.2d at 1099. Accordingly, the motion to dismiss Count IV is **DENIED**.

### v. Count V: Breach of the Duty of Good Faith and Fair Dealing

In Count V, Plaintiffs assert a claim for breach of the duty of good faith and fair dealing on behalf of the putative nationwide class. Defendants move to dismiss. Plaintiffs' good faith and fair dealing claim is based on precisely the same conduct alleged to support their other contract claims and fails for the same reasons. *Woods v. Google Inc.*, No. 05:11-1263, 2011 WL 3501403, at *6 (N.D. Cal. Aug. 10, 2011) ("If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated"). Further, Plaintiffs fail to allege any contractual relationship with Daimler. Accordingly, the motion to dismiss Count V is **GRANTED**, and Count V is **DISMISSED WITHOUT PREJUDICE**.

### vi. Count VI: Unjust Enrichment

In Count VI, Plaintiffs assert a claim for unjust enrichment on behalf of the putative nationwide class. Defendants move to dismiss. California law does not recognize claims for unjust enrichment. *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 997 (N.D. Cal. 2010); *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003) ("[T]here is no cause of action in California for unjust enrichment").

Accordingly, the motion to dismiss Count VI is **GRANTED**, and Count VI is **DISMISSED WITH PREJUDICE**.

### vii.  Count VII:  Violation of the CLRA

In Count VII, Plaintiffs assert a claim for violation of the CLRA on behalf of the putative California subclass.  Defendants move to dismiss.  The Court finds that the motion to dismiss Count VII should be denied.

"The CLRA proscribes specified 'unfair methods of competition and unfair or deceptive acts or practices in transactions for the sale or lease of goods to consumers.'" *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 833 (2006) (quoting Cal. Civ. Code § 1770(a)).  Such acts and practices include "[r]epresenting that goods . . . have characteristics . . . which they do not have," Cal. Civ. Code § 1770(a)(5), and [r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," *id.* § 1170(a)(7).

A manufacturer cannot be found liable for an omission under the CLRA absent an obligation to disclose.  *See Daugherty*, 144 Cal.App.4th at 835-36.  "Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."  *Smith v. Ford Motor Co.*, 749 F.Supp.2d 980, 987 (N.D.Cal. 2010).  Plaintiffs allege that the second and third circumstances exist here.

California law recognizes that "'the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer.'"  *Smith*, 749 F.Supp.2d at 988.  Thus, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either [1] an affirmative misrepresentation or [2] a safety issue." *Oestreicher v. Alienware Corp.*, 322 Fed.Appx. 489, 493 (9th Cir. 2009).

In this case, Plaintiffs have adequately pled exclusive knowledge and active concealment.  According to the Amended Complaint, Defendants had exclusive knowledge of material facts not known to Plaintiffs, through "pre-release testing data, early consumer complaints about the AIS Defect . . . testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Mercedes dealers, and from other internal sources."  FAC ¶ 55.  Plaintiffs further allege that Defendants concealed the problem from the general customer base.

Further, drawing all inferences in Plaintiffs' favor, the Court finds that Plaintiffs have adequately pled that the AIS Defect is a safety issue. Plaintiffs allege that the AIS Defect causes sudden and unexpected engine failure that could result in personal injury or death. It is not implausible that the issues that caused Feldman's vehicle to be totaled could give rise to safety concerns. Courts considering similar allegations have reached the same conclusion. *See Marsikian*, 2009 U.S. Dist. LEXIS 117012, at *16-17 (C.D.Cal. May 4, 2009) (denying a motion to dismiss a CLRA claim where plaintiff alleged that Mercedes–Benz AIS Defect could cause catastrophic engine and electrical system failure); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236 (C.D. Cal. 2011) (allegations of a water leak issue that could lead to sudden and unexpected engine failure resulting in personal injury or death sufficient to state a claim under the CLRA); *Ehrlich v. BMW of North America*, LLC, No. 10–1151, 801 F.Supp.2d 908, 918 (C.D.Cal. Aug. 11, 2010).

Defendants assert that Plaintiffs fail to state a CLRA claim because they did not enter into transactions with Defendants. However, California courts have held that "a cause of action under the CLRA may be established independent of any contractual relationship between the parties." *McAdams v. Monier, Inc.*, 182 Cal.App.4th 174, 186 (2010).

Accordingly, the motion to dismiss Count VII is **DENIED**.

### viii.   Count VIII: Violation of the SWL

In Count VIII, Plaintiff asserts a claim for violation of the SWL on behalf of the putative California subclass. Defendants move to dismiss. The Court finds that the motion to dismiss Count VIII should be granted.

The SWL provides that "[a] manufacturer shall, within 90 days of the adoption of an adjustment program, subject to priority for safety or emission-related recalls, notify by first-class mail all owners or lessees of motor vehicles eligible under the program of the condition giving rise to and the principal terms and conditions of the program." Cal. Civ. Code § 1795.92(a); *Smith*, 749 F.Supp.2d at 995. "'Adjustment program' means any program or policy that expands or extends the consumer's warranty beyond its stated limit or under which a manufacturer offers to pay for all or any part of the cost of repairing . . . any condition that may substantially affect vehicle durability, reliability, or performance, other than service provided under a safety or emission-related recall campaign. 'Adjustment program' does not include ad hoc adjustments made by a manufacturer on a case-by-case basis." Cal. Civ. Code § 1795.90(d).

Here, Plaintiffs allege that the DTB was a secret warranty program, which extended class members' warranties beyond their original limits. However, the plain language of the DTB compels the opposite conclusion: the DTB directs MBUSA dealers to perform the AIS modification under warranty. *See* DTB, FAC Ex. 1 (providing a

14

damage code for use "[i]n [c]ase of [w]arranty," and stating that "[t]he allowable labor operations should be used when submitting a warranty claim for this repair"). The DTB makes no mention of free repairs to vehicles no longer under warranty. Because Plaintiffs failed to allege facts that would support a finding that the DTB extended warranty coverage beyond the original period or constituted an adjustment program, the SWL claim must be dismissed. *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1240 (C.D. Cal. 2011) (dismissing similar allegations).

Accordingly, the motion to dismiss Count VIII is **GRANTED**, and Count VIII is **DISMISSED WITHOUT PREJUDICE**.

### ix. Count IX: Violation of the UCL

In Count IX, Plaintiff asserts a claim for violation of the UCL on behalf of the putative California subclass. Defendants move to dismiss this claim. The Court finds that the motion to dismiss Count IX should be denied.

Under the UCL, any person or entity that has engaged, is engaging, or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. The California Supreme Court has construed the term "unfair competition" broadly. *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) ("[Section 17200's] coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law"). Section 17200 "establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent." *Id.*

Defendants' challenge to the unfair business practices claim turns on whether the allegations support a duty to disclose known and material defects. For the reasons already stated, Plaintiffs have stated a viable claim of failure to disclose. Further, Plaintiffs seek the injunctive relief afforded by the Act. Thus, they have adequately stated a UCL claim. *See Marsikian*, 2009 U.S. Dist. LEXIS 117012, at *16-17 (C.D.Cal. May 4, 2009) (denying a motion to dismiss UCL claim based on similar allegations). Accordingly, the motion to dismiss Count IX is **DENIED**.

### x. Count X: Injunctive Relief

In Count X, Plaintiffs assert a claim for injunctive relief on behalf of the putative nationwide class. Defendants move to dismiss. Injunctive relief is, by definition, a remedy, not a cause of action. *See* UCL, Cal. Bus. & Prof. Code § 17203. Accordingly, the motion to dismiss Count X is **GRANTED**, and Count X is **DISMISSED WITH PREJUDICE**.

### C. REQUEST TO STRIKE CLASS ALLEGATIONS

Defendants move to strike the class allegations from the Amended Complaint under Federal Rule of Civil Procedure 12(f).

Rule 12(f) permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Numerous "cases have affirmed that motions to strike should be used sparingly . . . generally are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Ehrhart v. Synthes*, No. 07-01237, 2007 WL 4591276, at *3 (D.N.J. Dec. 28, 2007). Similarly, numerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature. *See id.*; *Andrews v. Home Depot U.S.A., Inc.*, 2005 WL 1490474 (D.N.J. 2005); *Myers v. Medquist, Inc.*, 2006 WL 3751210 (D.N.J. 2006).

Given the early stage of the proceedings, the Court finds that Defendants' request to strike the class allegations is premature. Defendants' the request to strike the class allegations is therefore **DENIED**. Defendants may re-raise their arguments in response to a motion for class certification.

### IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are **GRANTED** in part, and **DENIED** in part. Specifically:

- Count I (Violation of the NJCFA), Count VI (Unjust Enrichment), and Count X (Injunctive Relief) are dismissed with prejudice.
- Feldman's claim under Count II (Breach of Express Warranty), Count III (Breach of the Implied Warranty of Merchantability), Count V (Breach of the Duty of Good Faith and Fair Dealing), and Count VIII (Violation of the SWL) are dismissed without prejudice.
- Deutsch's claim under Count II (Breach of Express Warranty), Count IV (Common Law Fraud), Count VII (Violation of the CLRA), and Count IX (Violation of the UCL) will proceed.

Defendants' request to strike the class allegations is **DENIED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 18, 2012**