Matthew R. Mendelsohn
Eric D. Katz
David A. Mazie
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

**[Additional Attorneys Appear on Signature Page]**

Attorneys for Plaintiffs and Plaintiff Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGINA FELDMAN, LYNN DEUTSCH, individually and on behalf of others similarly situated,<br><br>             Plaintiffs,<br><br>      vs.<br><br>MERCEDES-BENZ USA, LLC, and DAIMLER, AG,<br><br>                    Defendants. | No.: 2:11-cv-984(PGS)(ES)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs Regina Feldman ("Feldman") and Lynn Deutsch ("Deutsch"), bring this action against Defendants Mercedes-Benz USA, LLC ("MBUSA") and Daimler, AG ("Daimler") (collectively "Defendants" or "Mercedes"), by and through their attorneys, individually and behalf of all others similarly situated ("Class Members"), and allege as follows:

## <u>INTRODUCTION</u>

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a

California class of current and former Mercedes vehicle owners and lessees with a defective Air Intake System ("AIS") in the following Mercedes vehicle models: 2007-2011 GL Class Mercedes, 2006-2011 ML Class Mercedes, and 2006-2011 R Class Mercedes ("Class Vehicles").  The GL Class and ML Class vehicles are sport utility vehicles, and the R Class vehicle is a multi-purpose vehicle.

2.     At the time of sale or lease, the Class Vehicles were all equipped with a defective AIS.  The AIS (part of the vehicle's climate control system) provides fresh air from outside the vehicle to be used by the climate control system of the Class Vehicles.  The Class Vehicles' AIS are uniformly and inherently defective in materials, manufacturing, and workmanship because they fail to prevent leaves, twigs, and other objects from entering the AIS and causing it to clog.  The AIS is also defective because it contains a "closed-end" drain valve made of a rubber-like material at the bottom of the AIS.  The defective material and the shape of the drain valve cause organic debris to be trapped and clog the valve.  As a result of this clogging, during rain or when the vehicle is washed, water builds up in the AIS and enters the vehicle's climate control system and vehicle interior, resulting in substantial electrical failure and damaging the interior components of the Class Vehicles, including but not limited to carpets and vital electronics, including control units that control the engine, transmission, brakes, batteries, headlights, and windshield wipers.  These defects, explained below in more detail, are referred to as "the AIS Defect."

3.     The Class Vehicles and their defective AIS present a safety hazard and are unreasonably dangerous to consumers because of the danger of catastrophic engine and/or electrical system failure while the vehicle is in operation.  The flooding can cause engine failure, suddenly and unexpectedly, at any time and under any driving conditions or speeds,

including highway speeds, thereby contributing to traffic accidents.

4.      Since late 2005, if not before, Mercedes knew that the Class Vehicles and their AIS are defectively manufactured and/or designed, not fit for their intended purposes, and are an unreasonably dangerous safety risk.  Nevertheless, Mercedes has actively concealed and failed to disclose this defect to Plaintiffs and prospective Class Members at the time purchase, lease,  repair or anytime thereafter.

5.      Indeed, in January 2006, MBUSA issued a Dealer Technical Bulletin ("DTB") to only its dealers, acknowledging the defective nature of the Class Vehicles and their AIS. (*See* Exhibit 1.)  Plaintiffs allege based on information and belief that the 2006 DTB is equally applicable to all the Class Vehicles.

6.       In the DTB, MBUSA provided its dealers with the following information:

> If you receive customer reports in the above model vehicles of tree debris collecting in the cowl area or water ingress into the interior of the vehicle due to the climate unit overflowing, the drain valve in the bottom of the climate control system air intake should be removed.  In heavy rain, the water in the air intake housing may not drain due to the drain valve being blocked with debris.  This is more common with vehicles that are parked under trees which shed more leaves, needles etc.

7.      The DTB then proceeds (discussed in detail below) to instruct the dealer to modify the AIS by "remov[ing] the drain valve (star-shaped grommet) from the bottom of the climate unit" ("AIS modification" or "AIS removal").

8.      Not only did MBUSA fail to disclose and actively conceal the fact that particular components within the Class Vehicles are defective, are a safety risk, and require costly repairs, but it also failed to disclose and actively concealed from Plaintiffs and Class Members that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles.

9.      Finally, despite its longstanding knowledge of this defect since late 2005, Mercedes has continued to routinely and improperly refuse to repair the Class Vehicles when the AIS Defect manifests itself, claiming instead that the water ingress is caused by an "outside influence," or Class Members' "negligence,"[1] and therefore not covered under warranty. Other times, Mercedes has simply contended without explanation that the defect was not covered under the terms of its warranty. For example, MBUSA told Deutsch that the AIS Defect and the related damage that it caused to her vehicle was not covered under her express warranty because it was due to an "outside influence," while telling Feldman that the defect was not covered by the terms of her extended Certified Pre-Owned warranty.

10.     In other words, while Mercedes knew that the AIS Defect and the related damage that it causes was covered under its warranties, it has disingenuously, wrongfully, improperly, and unfairly attributed the cause of the defect and the related damage that it causes either to "outside influence" consumer "negligence," or some other like term, or to non-coverage under the terms of its warranties, in an attempt to avoid millions of dollars in liability and shift responsibility for the AIS Defect and the extensive damage that it causes to consumers and/or their insurers.

11.     Plaintiffs are informed and believe and based thereon allege that despite its knowledge of the defect, Mercedes has not recalled the Class Vehicles to repair the defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse the Class Vehicles' owners and leaseholders the costs they incurred relating to diagnosing and repairing water leaks and the related damage that they cause, including but not

---

[1] For example, MBUSA avoids liability under its warranties by contending that Class Members were negligent when they parked their vehicles under trees and that their AIS would not have clogged and flooded if they had not done so.

limited to repairing or replacing electrical components, detailed cleaning and drying, other necessary repairs from water damage, increased insurance premiums, vehicle rental costs, etc.

12.     Mercedes knew and concealed the AIS Defect -- along with the attendant safety concerns and associated repair costs -- from Plaintiffs and Class Members both at the time of sale, repair and thereafter.  Had Plaintiffs and the Class Members known about these defects, safety risks, and the significant AIS-related repairs costs at the time of sale or lease, Plaintiffs and the Class Members would not have purchased the Class Vehicles or would have paid less for them.  As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their vehicles.

13.     Additionally, as a result of the AIS Defect contained in the Class Vehicles, Plaintiffs and the Class Members have been harmed and have suffered actual damages in that the Class Vehicles are experiencing continuous, progressive, and repeated water leak problems and/or are substantially certain to experience water leak problems before their expected useful life has run.

**<u>JURISDICTION AND VENUE</u>**

14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant MBUSA has its North American headquarters in this jurisdiction, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.   Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

16.     This Court has personal jurisdiction over Defendants MBUSA and Daimler. Defendant MBUSA's North American corporate headquarters is located in Montvale, New Jersey.   As such, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

**THE PARTIES**

**Plaintiffs**

17.     Plaintiff Regina Feldman ("Feldman") purchased a Certified Pre-Owned 2006 Mercedes-Benz R350 from Keyes European on November 13, 2008.   At the time that Feldman purchased the vehicle, it was still covered under the New Vehicle Limited Warranty ("NVLW") and was also covered by MBUSA's Certified Pre-Owned 100,000-mile express warranty ("CPO Warranty").   The vehicle was purchased primarily for personal, family, or household purposes.   The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification Number: 4JGCB65E36A027836.

18.     December is the rainy season in the county of Los Angeles, California. Feldman was operating her vehicle in the county of Los Angeles, California, during December

2010.  At this time, the vehicle had been driven a total of approximately 46,000 miles and was covered under CPO Warranty.  Unbeknownst to Feldman, also at this time, the vehicle's AIS was clogged.  On or about December 23, 2010, due to the AIS being clogged, water flooded into the interior portion of the vehicle, causing substantial damage to the climate control system, the electrical system, and the carpeting.  As a result of the flooding, it was no longer possible to safely operate the vehicle without the vehicle undergoing extensive repairs.

19.     On the above date, Feldman attempted to use her vehicle and discovered that it would not start.  Feldman jump started her flooded vehicle and drove it to Keyes European, a Mercedes-Benz dealership, for evaluation.  Keyes European confirmed that her vehicle had sustained water ingress damage to numerous components, including parts in the electrical system and climate control system, and advised Feldman that the damage was not covered under the terms of her CPO Warranty.[2]  Feldman was further advised to contact her insurance company and ask that they pay for the repairs under her comprehensive and collision insurance coverage.

20.     Feldman submitted the matter to her insurance company.  A repair estimate was written on January 2, 2011, at which time it was estimated that the vehicle sustained $17,061.76 worth of damage as a result of the flooding, including but not limited to damage to the vehicle's blower motor, A/C filters, evaporator assembly, cabin air filter, carpeting, battery, front SAM module, rear SAM module, fuse block, intermediate fuse block, wiring harness, and the entire electrical system.  Feldman's insurance company determined that the damage to the vehicle represented a total loss.  As a result, Feldman's insurance company did not repair the

---

[2] MBUSA took this position even though the AIS's air intake, drain valve, blower motor and fuse blocks are part of the vehicle's Climate Control and Electrical System and covered by Mercedes-Benz Certified Pre-Owned Limited Warranty.  (*See infra* ¶ 72-73.)

Vehicle, but instead paid Feldman the fair market value of the Vehicle, less a $500.00 insurance deductible incurred by Feldman.

21.     As with all other Class Members, Mercedes never informed Feldman through the Vehicle's maintenance booklet or otherwise about the need to occasionally inspect the AIS to determine if the AIS drain valve was clogged and to clean the AIS and valve if necessary. Worse yet, despite the fact that Feldman purchased the vehicle almost a year after Defendants notified their dealers about the existence of the defect and how to fix it, Plaintiff (like all Class Members) was sold the vehicle without the modification described in the DTB and was never told about it.

22.     Plaintiff, Lynn Deutsch ("Deutsch") purchased a used 2007 Mercedes-Benz R350 ("Vehicle"), with approximately 20,396 miles on its odometer, from a dealer in California on or about January 9, 2010.  The Vehicle was purchased primarily for personal, family, or household purposes.  The Vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Mercedes, and bears the Vehicle Identification Number: 4JGCB65E07A038617.

23.     On or about November 26, 2010, while her vehicle was still covered under the NVLW, Deutsch noticed that her vehicle would not start.  In response, Deutsch (with the help of her husband) jumped started the vehicle and brought it to an authorized Mercedes service center, Autobahn Motors in Belmont, California.  Deutsch was advised that her vehicle's AIS drain was clogged with organic debris, which resulted in water backing up into the AIS and overflowing into the interior of the vehicle. The dealer specifically stated on the repair order that:

> **DRAIN AT VENT INTAKE CLOGGED UP.   VERIFIED COMPLAINT FAN RUNS ALL THE TIME**.   PERFORMED DTC TEST NO RELATED CODES FOR FAN.  R&R INTERIOR

> FAN AND **FOUND CORROSION AND SIGNS OF WATER AT CONECTOR.  INSPECTED FOR WATER LEAK AND FOUND DRAIN CLOGGED WITH LEAVES AND WATER BACKED UP INTO HEATER BOX.   CLEANED DRAIN AND MODIFIED DRAIN.**  REPLACED AIR FILTERS FOR INTERIOR AIR. R&R R/FRONT CARPET, R&R CENTER CARPET AND CLEANED ALL CONECTORS AND WIPED OUT WATER.   1.70NON. REPLACED **FRONT SAM AND BLOWER MOTOR DUE TO WATER CONTAMINATION.** TESTED BATTERY CHARGE ANDR RETEST BATTERLY WOULDN'T   TAKE   CHARGE.    REPLACED   BATTERY REINSTALLED ALL PARTS ALL OK.

> (Emphasis added.)

24.     As a result of the water ingress, Deutsch's vehicle sustained significant damage including but not limited to damage to the interior (carpeting and carpet padding), electrical system (SAM control module, battery, wiring and wiring harness), and climate control system (blower motor and evaporator assembly).  As a result of the damage, it was no longer possible to safely operate the vehicle without it undergoing extensive repairs.

25.     Despite the fact that Deutsch's vehicle was still covered under the NVLW, she was advised that the repairs would not be covered because the water leak was an "outside influence" not covered under MBUSA's 4-year/50,000-mile express warranty.   Accordingly, Deutsch was provided an estimate of $2,280 to repair the damage to her vehicle, including the drain modification that MBUSA had outlined in its secret bulletin.

26.     Deutsch felt that the damage should have been covered under her NVLW and complained to her dealer about MBUSA's position on this matter.  Indeed, MBUSA has already admitted in its papers that it should have covered Deutsch's repairs under its NVLW and breached Deutsch's and other prospective Class Members' NVLW when it failed to cover all of their AIS Defect related repairs under (at least) its express warranty:

> **[I]n providing AIS repairs under the NVL[3], MBUSA merely provided warranty coverage as agreed—not any unlawful, secret "adjustment program."**

(*See* Brief of Defendants In Support Of Motions To Dismiss Plaintiff's Complaint And To Strike Plaintiff's Class Action Allegations filed on May 2, 2011, Dock. No. 13-1 at 32.)

27.     Therefore, MBUSA has already conceded that by failing to cover the "AIS [defect and related] repairs under the NVL Warranty . . . as agreed," MBUSA breached the NVLW.

28.     Nevertheless, after showing her dissatisfaction and complaining about MBUSA's refusal to cover the cost of the repairs under its NVLW, Mercedes agreed to provide her with a "one time goodwill repair to insure client satisfaction" and to only charge her for the parts and not for the labor to perform the repairs.  Because Deutsch needed the vehicle repaired, she accepted Mercedes' offer and had the repairs performed for approximately $1,033.00.[4]  In addition, the dealer refused to pay for Deutsch's rental car fees while her vehicle was out of service for approximately 20 days.

29.     As with all Class Members who own the 2006 through 2008 Class Vehicles, Mercedes never informed Feldman or Deutsch through their vehicles' maintenance booklets or otherwise about the need to periodically inspect the AIS to determine if the AIS drain valve was clogged and to clean it if necessary.

---

[3] MBUSA claims that the "TSB [plaintiff] puts at issue instructs dealers to cover AIS repairs "'*under warranty*.'"  (Dock. No. 13-1 at 32-33 (emphasis added).)

[4] MBUSA's failure to cover the cost of the entire repair is specifically troubling in light MBUSA's representation in its warranty booklet that "warranty repairs will be made at no charge for parts and labor."

30.     Mercedes has very detailed guidelines relating to the manner in which its authorized dealers are supposed to provide maintenance to Class Vehicles.  The guidelines include maintenance schedules, broken down into Service A, Service B, and Service C maintenance schedules.   At all times relevant, Mercedes failed to indicate in any of the maintenance schedules for the 2006 through 2008 Class Vehicles the requirement by dealerships to check, maintain, and clear the AIS in order to prevent vehicle flooding. Additionally, Mercedes also failed to notify owners and lessees of the 2006 through 2008 Class Vehicles of some independent duty to inspect and clean the AIS.

31.     However, starting in 2009, for the first time, Mercedes did include in its maintenance schedule for the 2009 through 2011 Class Vehicles  the requirement that these Class Vehicles (*i.e.*, model year 2009-2011) had to undergo service to "clean water drain in air/water duct" at every "20,000 miles or 2 years."  Unfortunately, Defendants failed to alert or provide the same notice to the owners and lessees of 2006 through 2008 Class Vehicles, which contain the same defective parts.

32.     Moreover, Plaintiffs allege based upon information and belief that without the AIS modification (2006 DTB) and/or more frequent maintenance of the AIS than MBUSA currently suggests with respect to 2009 through 2011 Class Vehicles, that maintaining the AIS every "20,000 miles or 2 years" alone will not fix the AIS Defect and the associated water leak problems.

33.     Plaintiffs Feldman and Deutsch have suffered ascertainable losses as a result of Defendants' omissions and/or misrepresentations associated with the AIS Defect, including but not limited to out-of-pocket losses associated with the AIS Defect.

34.     Neither of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiffs of the existence of the AIS Defect and the related damage that it causes, and purposefully omitted this information at the time of purchase or lease and during routine maintenance in an effort to avoid either having to correct and/or repair this defect under any warranty or causing Plaintiffs and Class Members not to purchase their vehicles.

35.     Defendants also continue to conceal the defect and the associated safety risks associated with the Class Vehicles because they do not want to be forced by NHTSA to provide a nationwide recall of the Class Vehicles.

**Defendants**

36.     Defendant MBUSA is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 3 Mercedes Drive, Montvale, New Jersey 07645, and, for purposes of 28 U.S.C. § 1441(b), is a citizen of the State of New Jersey.  MBUSA is a wholly-owned subsidiary of Daimler.  Upon information and belief, Daimler is the designer and manufacturer of the Class Vehicles, while MBUSA is the distributor of the Class Vehicles in the United States.

37.     Defendant Daimler is a German corporation headquartered at HPC 0624, D-70546 Stuttgart, Germany.

38.     Upon information and belief, Defendant MBUSA communicates with Defendant Daimler concerning virtually all aspects of the Mercedes products it distributes within the United States.

39.     Upon information and belief, the design, modification, installation, and decisions regarding the AIS within the Class Vehicles were performed exclusively by

Defendants MBUSA and Daimler.

40.     Upon information and belief, Defendants MBUSA and  Daimler develop the owner's manuals, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles.

41.     Defendants MBUSA and Daimler engage in continuous and substantial business in New Jersey.

## TOLLING OF STATUTES OF LIMITATION

42.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and Class Members could not have reasonably discovered the true, defective nature of the AIS Defect until shortly before this class action litigation was commenced.

43.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles, that the AIS Defect is based on defects in materials and/or manufacturing, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of Defendants failure to disclose and/or active concealment, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.     The Defective AIS within the Class Vehicles.**

44.     The standard features offered by Mercedes in the Class Vehicles varied based on, *inter alia*, Class Vehicle platforms.  However, all Class Vehicles contain a climate control system that is equipped with a defective AIS, which is shaped like a box and located under the hood on the passenger side.  The purpose of the AIS is to obtain fresh air from outside the vehicle to use in the vehicle's climate control system.

45.    The AIS in the Class Vehicles is defective because it fails to prevent leaves, twigs, debris, and other objects from entering the AIS and causing it to clog.  The AIS is also defective because it contains a "closed-end" drain valve made out of a rubber-like material at the bottom of the AIS that traps the organic debris that gets into the AIS.  These defects prevent water (*e.g.*, during rain or when the vehicle is washed) from exiting the AIS.  When enough water builds up in the AIS, the water overflows into a vehicle's climate control system, and ultimately enters the cabin area, which can damage the interior components and electrical system.  This defect -- which typically manifests before the express warranty period has expired -- will inevitably cause extensive damage to the Class Vehicles.

46.    Upon information and belief, Mercedes issued a DTB T-B-83.10/80 on or about January 7, 2006, addressing water leaks into the interiors of the Class Vehicles.  (*See* Exhibit 1.)

47.    DTBs are designed to provide guidance to Mercedes mechanics and service people with respect to reoccurring problems or issues.  T-B-83.10/80 provided a fault tracing and service method for common complaints of water leaks into the interiors of the Class Vehicles.

48.    Specifically,   T-B-83.10/80 advises that:

> If you receive customer reports in the above model vehicles of tree debris collecting in the cowl area or water ingress into the interior of the vehicle due to the climate unit overflowing, the drain valve in the bottom of the climate system air intake should be removed. In heavy rain, the water in the air intake housing may not drain due to the drain valve being blocked with debris.  This is more common with vehicles that are parked under trees which shed small leaves, needles etc.  (Figure 1).



Figure 1 – Debris in cowl area         T-B-83.10/80

49.     Through T-B-83.10/80, Mercedes instructs repair technicians to perform the following procedure:

1.  Open Engine Hood.

2.  Remove climate system air intake cover by releasing the two clips and pulling up.

3.  Remove drain valve (star shaped grommet) from the bottom of the climate unit (Figure 2).

4.  Reinstall air intake cover.



Figure 2 – Drain Valve (251 shown)      T-B-83.10/80

50.     In many instances, consumers have and will incur expenses for this repair despite the AIS Defect having been contained in the Class Vehicles when manufactured by

Defendants and despite that the defect manifests itself during the warranty period.

51.      The Class Vehicles are designed to function for periods (and mileages) substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the vehicle will allow water to enter the interior for significantly longer than the limited times and mileages identified in Defendants' warranties, if ever.[5]

52.      Plaintiffs are also informed and believe and based thereon allege that Mercedes acquired its knowledge of the AIS Defect through sources not available to Class Members, including but not limited to pre-release testing data, early consumer complaints about the AIS Defect contained in the Class Vehicles (as well as earlier models of other Mercedes Benz vehicles that were manufactured before 2006) to Mercedes and its dealers (who are its agents for vehicle repairs), testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Mercedes dealers, and from other internal sources.

53.      Class Members could not have discovered the latent AIS Defect through any reasonable inspection of their vehicles prior to purchase.

54.      Defendants failed to adequately research, design, test, and/or manufacture the AIS before warranting, advertising, promoting, marketing, and selling it as suitable and safe for use in an intended and/or reasonably foreseeable manner.

55.      Defendants expressly warranted the affected vehicles to be free from defects for a period of 4 years or 50,000 miles with respect to their Express Limited Warranty, and would

---

[5] Indeed, Plaintiffs and class members reasonably expected that their climate control system will not flood and damage the interior components of the Class Vehicles with water during rain or when the vehicle is washed during the life of their vehicles.

repair or replace any parts that were defective in material or workmanship during the warranty period. Defendants also expressly warranted that the affected vehicles to be free from defects with respect to their engines, electrical systems, climate control systems, and other vehicle parts for a period of 5 years or 100,000 miles with respect to their Certified Pre-Owned Express Warranty, and 7 years or 100,000 miles with respect to their extended Optional Limited Express Warranty.

56.     Buyers, lessees, and other owners of the affected vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles.  Had these buyers and lessees not been purposely deceived by Defendants regarding their vehicles and the known defects within them, Class Members would have taken steps to prevent the AIS drain from clogging, and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased the vehicles at all.

**B.     Complaints by Other Class Members**

57.     Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the Internet is replete with examples of blogs and other websites where consumers have complained of the exact same AIS Defect within the Class Vehicles.

58.     For example, on April 6, 2009 an owner of a 2006 R350 that goes by user name AFS11 made the following posts on a popular Mercedes forum:

> R350 Water leak
>
> Hello Everyone, about 2 weeks ago I sponged out about 2 gallons of water from the fuse compartment that is under the driver's footwell. 😡  The fuses went haywire, every alarm in the car was going off and frankly a lot of cursing ensued. Has anyone experienced this before? The dealer could not find the source and I

have not found any recall info. It happened again yesterday ... Any tips would be welcome. It is a 2006 R350.

Alain

* * *

I have since found out that there has been a problem with the air intake system ant that I could remove the drain bung from the heater housing to improve the situation. Not sure if that is something a user can do or if this is a garage-only item but I will take a look.

(http://www.benzworld.org/forums/w251-r-class/1437967-r350-water-leak.html)

59.    Similarly, in October 2009 an owner of an R350 that goes by user name WallyR350 made the following post on a popular Mercedes forum:

Well I took the lid off [the AIS] today and found about 3 inches of water sitting in the bottom of this compartment. And there is a drain, but it was blocked with mud and debris. So I cleared the drain and the water drained like it should have. But I will have to make a trip to the stealer as the water shorted out the fan and now the fan just keeps running until the battery is dead.

What amazing engineering!!!

(http://www.benzworld.org/forums/w251-r-class/1477261-standing-water-reservoir.html)

## CLASS ACTION ALLEGATIONS

60.    Plaintiffs bring this action on behalf of themselves, and on behalf of a California class, pursuant to Fed. R. Civ. Pr. P. 23(a), 23(b)(2), and/or 23(b)(3) defined as follows:

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "Class").

61.    Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s)

assigned to this case.  Plaintiffs reserve the right to modify the Class definition if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

62.     <u>Numerosity</u>:  Upon information and belief, the class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual Class Members are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that tens of thousands of Class Vehicles have been sold and leased in the United States of America, and thousands of Class Vehicles have been sold or leased in California.

63.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions or law and fact exist as to all Class Members.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to:

      a.      whether the AIS drains in Class Vehicles are predisposed to clogging;

      b.      whether the AIS in Class Vehicles contain a design defect;

      c.      whether the AISs in Class Vehicles contain a defect in material, manufacturing and/or workmanship;

      d.      whether the AIS Defect is common to all Class Vehicles;

      e.      whether the AIS Defect causes water ingress into the interior of the vehicle, and if so, the extent of the resulting damage;

      f.      whether Defendants knowingly and purposefully failed to disclose the existence and cause of the AIS Defect in Class Vehicles in order to defraud Plaintiffs and the Class and improperly shift the burden of payment;

g.      whether Defendants' conduct violates the California Legal Remedies Act;

h.      whether Defendants' conduct violates California's Secret Warranty Law;

i.      whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the AIS Defect, Plaintiffs and Class Members have suffered ascertainable loss of moneys, property, and/or value; and

j.      whether Plaintiffs and Class Members are entitled to monetary damages and/or other remedies, and if so the nature of any such relief.

64.     <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased Class Vehicle with the AIS Defect, as did each Class Member. Furthermore, Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

65.     <u>Adequacy</u>:  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

66.     <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants'

conduct.   It would be virtually impossible for Class Members individually to redress effectively the wrongs done to them.  Even if the Class Members could afford such individual litigation, the court system could not.   Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, Class Members can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims and registration records, and database of complaints.

67.   Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF EXPRESS WARRANTY

68.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.   Plaintiffs bring this cause of actions against MBUSA only.

70.   MBUSA expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  MBUSA also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge if they manifested during the NVLW or CPO warranty.

71.   MBUSA provided in its NVLW that "Mercedes-Benz USA, LLC (MBUSA)

warrants to the original and each subsequent owner of a new Mercedes-Benz truck that any authorized Mercedes-Benz truck Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period."

72.    MBUSA specifically provided in its CPO warranty that "If a Part Is Not Listed, It Is Not Covered," and, among other items, listed the following:

> **16.  ELECTRICAL SYSTEM**: Ignition distributor, rotor and cap, starter system, components, as well as all electrical motors, wiring harness and connectors, starter lockout switch, sending units, sensors, switches, fuse boxes, relay modules, control modules, transmitters, instrument panel, gauges, rheostats, potentiometers, blower motor series resistors, alternator pulley, voltage regulator, diodes, buzzers, horns, actuators, timers, electro-mechanical valves, solenoids, as well as air bag contact plate [] heated seat elements, and global positioning system (GPS).

> **17. CLIMATE CONTROL:** All electrical components noted above, as well as the A/C compressor and clutch, receiver/ drier bottle, refrigerant hoses and connections, evaporator, expansion valve, condenser, rear vent control cables, vacuum actuators, all vacuum valves and elements, auxiliary cooling pump, cold engine lock-out switch, temperature selector wheel, servo unit, mono valve, dual valve, switchover valve, heater core and heater housing assembly.

73.    The Components that make up the AIS in the Class Vehicles are part of both the vehicles' climate control and electrical systems.   For instance, the air intake, drain valve, blower motor and the evaporator assembly are components of the AIS and included in the Class Vehicles' climate control system.   This is evidenced by Defendants' own DTB addressing the AIS Defect which advises technicians that "**the drain valve in the bottom of the climate system air intake should be removed**."  (emphasis added).  Similarly, wiring, wiring harnesses, modules and fuses that are part of the AIS are also components of the Class Vehicles' electrical system.   These parts, which are supposed to be covered by the CPO Warranty, are part of the AIS and fail as a result of the defect.

74.     MBUSA breached this warranty by selling to Plaintiffs and Class Members the Class Vehicles with known defects, including but not limited to the defective AIS.

75.     MBUSA further breached this warranty by failing to repair and/or replace Plaintiffs' and other putative Class Members' AIS, as well as the resulting damage caused by water ingress into the interior of the vehicle when the defects failed during the NVLW or CPO warranty.

76.     Specifically, Deutsch presented her vehicle to an authorized service center while still covered under the NVLW, and Feldman brought her vehicle to an authorized service center while still covered under the CPO warranty.  Despite that, Defendants refused to honor the warranties and repair the damage caused by the AIS Defect free of charge.

77.     MBUSA knew of the aforesaid defects by late 2005, if not before, and continues to have knowledge of the AIS Defect and breaches of its express warranty, yet has intentionally failed to notify Plaintiffs and Class Members.

78.     This intended failure to disclose the known AIS Defect is malicious, and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiffs and Class Members.

79.     As a result of MBUSA's actions, Plaintiffs and Class Members have suffered economic damages including but not limited to costly repairs, loss of use of the vehicles, substantial loss in value and resale value of the vehicles, and other damage.

80.     MBUSA's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, MBUSA's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect and purposefully concealed the defect

until such time that the Class Vehicles were out of warranty.  Further, even when the defect manifested during the warranty period, as was the case with Plaintiffs Deutsch and Feldman, MBSUA refused to repair the vehicle under warranty.

81.     The time limits contained in MBUSA's warranty period were also unconscionable and inadequate to protect Plaintiffs and Class Members.  Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored MBUSA.  A gross disparity in bargaining power existed between MBUSA and Class Members, and MBUSA knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

82.     Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of MBUSA's conduct described herein.

## COUNT II
## COMMON LAW FRAUD

83.     Plaintiffs and the Class incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

84.     Defendants made material misrepresentations and omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect with the AIS in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.

85.     Defendants also affirmatively misrepresented that the items contained in the maintenance schedule and owner's manual were the only things that needed to be done with regard to the owners and lessees of 2006 to 2008 Class Vehicles, in order to ensure that said

vehicles operated as intended, when in fact Defendants were aware that it was necessary to clean and/or remove the AIS drain to prevent clogging and water ingress into the interior of said Class Vehicles.  Furthermore, with regard to owners and lessees of 2009 to 2011 Class Vehicles, Defendants affirmatively misrepresented that following the maintenance schedule with regard to the maintenance of the AIS would be sufficient to ensure that Class Vehicles would not experience the AIS Defect.  These omissions and statements were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and Class Members rely on them.

86.     Plaintiffs and Class Members reasonably relied on these statements and omissions, and suffered damages as a result.

**COUNT III**
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code section 1750 *et seq*.**

87.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

88.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class.

89.     Defendants are "persons" as defined by California Civil Code section 1761(c).

90.     Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code section 1761(d).

91.     By failing to disclose and concealing the AIS Defect, Defendants violated California Civil Code section 1770(a), as it represented that its Class Vehicles and AIS in its Class Vehicles had characteristics and benefits that they do not have, and represented that its Class Vehicles and its AIS were of a particular standard, quality or grade when they were of

another.  (*See* Cal. Civ. Code §§ 1770(a)(5) &(7).)

92.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

93.     Defendants knew that its Class Vehicles and AIS were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

94.     Defendants was under a duty to Plaintiffs and the Class to disclose the defective nature of the AIS because:

        a.     Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' AIS;

        b.     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the AIS had a dangerous safety defect until manifestation of the failure; and

        c.     Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety defect.

95.     In failing to disclose the AIS Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

96.     The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiffs and the Class Members known the defective nature of the AIS, they would not have purchased the Class Vehicles, would have paid less for them, or would have required Defendants to repair the defect and the damage that it causes free of charge.

97.     Plaintiffs and the Class Members reasonably expected the AIS, which is part of the Class Vehicles' climate control system, to function properly for the life of their vehicles. That is the reasonable and objective consumer expectation for a vehicle's AIS.

98.     Similarly, Plaintiffs and the Class Members reasonably expected that the AIS and the entire climate control system of their vehicles would not fail as a result of a clogged drain valve.  That is the reasonable and objective consumer expectation for a vehicle's AIS and climate control system.

99.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Class Members have suffered and will continue to suffer actual damages.

100.     Plaintiffs and Class Members are entitled to equitable relief.  Pursuant to the provisions of California Civil Code section 1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that MBUSA's conduct violates the CLRA, and attorneys' fees and costs of litigation.

101.     Plaintiffs have provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code section 1782(a).  Defendants failed to provide appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter.  Plaintiffs thus seek actual, statutory, and punitive damages, in addition to injunctive and equitable relief.

**<u>COUNT IV</u>**
**Violation of UCL other than Violation of the Secret**
**Warranty Law, California's Unfair Business Practices Act,**
**California Business & Professions Code section 17200 *et seq.***

102.     Plaintiffs and the Class hereby incorporate by reference their allegations contained in the preceding paragraphs of this Complaint.

103.     Plaintiffs bring this cause of action against Defendants on behalf of themselves and on behalf of the Class.

104.     California Business & Professions Code section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

105.     Defendants knew its Class Vehicles and their AIS were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

106.     Defendants concealed and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their defective AIS.

107.     Defendants were in a superior position to know the true state of facts about the safety defects contained in the Class Vehicles.

108.     Defendants made partial disclosures about the quality of the Class Vehicles without revealing that they were defective and highly prone to water leakage and flooding.

109.     Defendants actively concealed the defective nature of the Class Vehicles from Plaintiffs and the Class.

110.     In failing to disclose the AIS Defect, Defendants have knowingly and intentionally concealed material facts and breached its duty not to do so.

111.     The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price for them.  Had Plaintiffs and the Class Members known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

112.     By its conduct alleged herein, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business acts and practices.

113.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

114.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

115.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

### COUNT V
**Failure to Make Available Terms and Conditions of Service
Contract Pursuant to Song-Beverly Consumer Warranty Act,
California Civil Code Section 1794.4**

116.    Plaintiff Feldman hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

117.    Plaintiff Feldman brings this cause of action against Defendant MBUSA on behalf of herself and on behalf of the Class.

118.    The Song-Beverly Consumer Warranty Act, California Civil Code sections 1790 *et seq.*, requires that the seller of a service contract make the terms and conditions of the contract available to the purchaser at the point of sale.

119.    Defendant MBUSA's CPO Warranties are "service contracts" as defined in California Civil Code § 1791.

120.    Specifically, Civil Code section 1794 .4 (c ), requires, among other items, that a service contract contain certain items of information, including a "clear and conspicuous" statement regarding "whether the buyer has an obligation to provide preventative maintenance or perform any other obligation and, if so, the nature and frequency of the preventative maintenance and any other obligation, and the consequences of any non-compliance."

121.    Defendant violated California Civil Code section 1794.4 when MBUSA failed to specify in the service contract, among other things, that owners and lessees of 2006 to 2008 Class Vehicles needed to perform regular maintenance on the AIS in order to ensure it continued to function.  Furthermore, defendant failed to advise owners and lessees of 2009 to 2011 Class Vehicles in writing that the recommended maintenance of the AIS would not be

sufficient to ensure that it continued to function as intended..[6]

122.    As a result of MBUSA's violation of the Song-Beverly Consumer Warranty Act, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief.

## COUNT VI
### Failure to Fully Set Forth Terms of Warranty in Writing
### Pursuant to Song-Beverly Consumer Warranty Act,
### California Civil Code Section 1793.1

123.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

124.    Plaintiffs bring this cause of action against MBUSA on behalf of themselves and on behalf of the Class.

125.    The Song-Beverly Consumer Warranty Act, California Civil Code sections 1790 *et seq.*, requires, at section 1793.1, that a retailer who makes an express warranty fully set forth the terms and conditions of the warranty in writing.

126.    MBUSA failed to specify in writing the terms and conditions of its warranty, among other things, that owners and lessees of 2006 to 2008 Class Vehicles needed to perform regular maintenance on the AIS in order to ensure it continued to function.  Furthermore, defendant failed to advise owners and lessees of 2009 to 2011 Class Vehicles in writing that the recommended maintenance of the AIS would not be sufficient to ensure that it continued to function as intended.

127.    As a result of MBUSA's violation of the Song-Beverly Consumer Warranty Act, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief.

## COUNT VII
### Violation of the Magnuson-Moss Warranty Act
### Pursuant to 15 U.S.C. § 2302

128.    Plaintiffs hereby incorporate by reference the allegations contained in the

---

[6] In their Motion to Dismiss Plaintiffs First Amended Complaint, Defendants contend that the DTB was issued to notify "technicians how to diagnose this particular maintenance issue." [Doc. No. 28-1 at 27]. The DTB requiring the need for AIS removal was never made a part of any maintenance instructions that were provided to consumers and prospective class members.

preceding paragraphs of this Complaint.

129.     Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendant MBUSA.

130.     The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

131.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

132.     Defendant is a "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4)-(5).

133.     Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

134.     Defendant's CPO Warranty are "service contracts" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(8).

135.     Defendant's conduct as described above violates 15 U.S.C. § 2302, which requires a warrantor to "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty", including "a statement of what the consumer must do and expenses he must bear."

136.     Here, defendant failed to advise Plaintiffs and owners and lessees of 2006 to 2008 Class Vehicles at the time of purchase in writing that they needed to perform regular maintenance on the AIS in order to ensure it continued to function.  Furthermore, defendant failed to advise owners and lessees of 2009 to 2011 Class Vehicles in writing that the recommended maintenance of the AIS would not be sufficient to ensure that it continued to function as intended.

137.     As a result of MBUSA's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

a.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

b.  Appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

c.  Award all actual, general, special, incidental, statutory, treble, punitive, and consequential damages to which Plaintiffs and Class Members are entitled;

d.  Award pre-judgment and post-judgment interest on such monetary relief;

e.  Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the design defect;

f.  Award reasonable attorney's fees and costs, and grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated:  February 4, 2013

By: _____

Matthew Mendelsohn
Eric D. Katz
David A. Mazie
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mmendelsohn@mskf.net
e-mail: dmazie@mskf.net

Payam Shahian
**STRATEGIC LEGAL PRACTICES, APC**
11601 Wilshire Blvd., Suite 500
Los Angeles, CA 90025
Telephone: (310) 575-1845
Facsimile: (310) 693-9085
e-mail: pshahian@slpattorney.com

Robert L. Starr
**THE LAW OFFICE OF ROBERT L. STARR**
23277 Ventura Boulevard
Woodland Hills, California, 91364-1002
Telephone: (818) 225-9040
Facsimile: (310) 225-9042
e-mail: starresq@hotmail.com

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

_____
MATTHEW R. MENDELSOHN

Dated: February 4, 2013